**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Robert Rodriguez CARRILLO,**
**Defendant–Appellant.**

**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Carlos Alonzo GARCIA, Defendant–**
**Appellant.**

**Nos. 90–50704, 92–50082.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 2, 1993.

Decided April 19, 1993.

Jeffrey Liebowitz, Marina Del Rey, CA, for defendant-appellant-Carrillo.

Victor B. Kenton, Santa Monica, CA, for defendant-appellant-Garcia.

Barbara M. Scheper, Asst. U.S. Atty., Los Angeles, CA, for plaintiff-appellee.

Before: WALLACE, Chief Judge, SNEED and HALL, Circuit Judges.

WALLACE, Chief Judge:

In these two cases that have been consolidated for appeal, Garcia and Carrillo challenge the sentences they received following their convictions. Garcia pleaded guilty to several counts of unarmed bank robbery, in violation of 18 U.S.C. § 2113(a); Carrillo was convicted, after a jury trial, of one count of armed bank robbery, in violation of 18 U.S.C. §§ 2113(a) and (d). Both were sentenced as career criminal offenders, pursuant to section 4B1.1 of the United States Sentencing Guidelines (Guidelines). Their appeals present the same question: for purposes of sentencing a defendant pursuant to section 4B1.1, may a district court rely on a prior conviction that occurred when the defendant was less than 18 years old but was tried as an adult, and the defendant was sentenced to the California Youth Authority for an indeterminate period exceeding one year and one month? The district court in both cases had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction over these timely appeals pursuant to 18 U.S.C. § 3742(a). We affirm.

I

Garcia was sentenced as a career criminal offender, pursuant to U.S.S.G. § 4B1.1, on January 27, 1992. In applying section 4B1.1, the district court relied on Garcia's previous conviction for robbery, which he committed in 1978 when he was 17 years old. Although he was tried as an adult for that offense, the state court committed Garcia to the custody of the California Youth Authority for a maximum term of confinement of three years. It is unclear from the record whether he served the full three years. Garcia argues that section 4B1.1 cannot apply because the sentence he received was indeterminate and not an adult sentence.

Carrillo was sentenced on November 29, 1992, and he also was sentenced as a career criminal offender pursuant to section 4B1.1. In applying section 4B1.1, the district court relied upon Carrillo's previous conviction for robbery, which he committed in 1977 when he was 17 years old. Carrillo was tried as an adult for that offense, but he, too, was committed to the California Youth Authority. Carrillo's commitment was to last until his 26th birthday, but he was paroled after seven-months' confinement. Like Garcia, Carrillo also contends that this conviction should not have been counted for purposes of section 4B1.1 because the sentence he received was indeterminate and not an adult sentence.

II

A challenge to the district court's interpretation of the Guidelines is reviewed de novo. *United States v. Williams*, 891 F.2d 212, 214 (9th Cir.1989) (*Williams*), *cert. denied,* 494 U.S. 1037, 110 S.Ct. 1496, 108 L.Ed.2d 631 (1990). In *United States v. Anderson*, 942 F.2d 606 (9th Cir.1991) (en banc) (*Anderson*), we established the following framework for interpreting the Guidelines and the accompanying commentary: (1) courts should always consider the commentary, regardless of whether the Guideline appears clear on its face; (2) courts should construe a Guideline and its commentary to be consistent, "so that they make sense in terms of the underlying purposes and overall structure of the [G]uidelines;" (3) if the Guidelines and commentary cannot be reconciled, the text of the Guidelines should prevail. *See id.* at 612–13.

Before we address the issues raised by Carrillo and Garcia, an initial question must be resolved: which Guidelines should be applied? Carrillo was sentenced in 1990 and Garcia in 1992. Nor-

mally, the Guidelines in effect at the time of sentencing are applied, *see United States v. Mooneyham*, 938 F.2d 139, 140 (9th Cir.), *cert. denied*, — U.S. —, 112 S.Ct. 443, 116 L.Ed.2d 461 (1991), which would mean the 1991 amendments to the Guidelines would apply only to Garcia. However, the amendments relevant to Carrillo's appeal were to the commentary, not to the substantive provisions of the Guidelines. In addition, the amendments merely clarify the meaning of the Guidelines; they neither add to nor alter the substantive meaning of the Guidelines themselves. It is therefore appropriate to look to the 1991 Guidelines and the amended commentary in addressing Carrillo's as well as Garcia's appeal. *See United States v. Madera–Gallegos*, 945 F.2d 264, 267 n. 2 (9th Cir. 1991) (explaining that commentary added after defendants were sentenced could be relied upon because it merely clarified the operation of the Guidelines). Thus, all references to the Guidelines will be to the version effective as of November 1, 1991.

## A.

■ Our analysis begins with the language of the Guidelines themselves. To be sentenced as a career offender pursuant to section 4B1.1, a defendant must meet three requirements: (1) he must be at least 18 years old at the time of the instant offense; (2) the instant offense must be a felony that involves either violence or a controlled substance; and (3) the defendant must have "at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1. Both Carrillo and Garcia focus only on the third requirement. Both concede that one of their previous felony convictions is properly relied upon because it occurred after each had turned 18. Thus, both appeals turn on whether their challenged earlier incarcerations were "prior felony conviction[s]."

A "prior felony conviction" is defined in application note 3 to section 4B1.2 as:

a prior adult federal or state conviction for an offense punishable by death or imprisonment for a term exceeding one year, regardless of whether such offense is specifically designated as a felony and regardless of the actual sentence imposed.... A conviction for an offense committed prior to age eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted.

U.S.S.G. § 4B1.2 application note 3.

Garcia and Carrillo's convictions seem to fall within this definition, and we could end our discussion now except that application note 4 to section 4B1.2 states that the provisions of section 4A1.2 are "applicable to the counting of convictions under § 4B1.1." U.S.S.G. § 4B1.2 application note 4. Section 4A1.2 does not deal with career offenders, but describes how prior convictions are counted for purposes of determining a defendant's criminal history. The provision of section 4A1.2 that is relevant to this appeal concerns the treatment of offenses committed prior to the defendant's 18th birthday, and it states: "If the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month, add 3 points under § 4A1.1(a) for each such sentence." U.S.S.G. § 4A1.2(d)(1). Carrillo and Garcia argue that only those offenses that would be counted under section 4A1.2(d)(1) can be relied upon for purposes of sentencing a defendant as a career criminal offender under section 4B1.1. The government concedes this point, and we agree with Carrillo and Garcia's argument.

■ The next question, then, is whether Carrillo and Garcia's youthful convictions would be counted under section 4A1.2(d)(1). Carrillo and Garcia argue that the convictions should not be counted because the sentences they received were indeterminate, and thus were not "sentence[s] of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.2(d)(1). However, section 4A1.2(b) defines the term "sentence of imprisonment" as "the maximum sentence imposed." U.S.S.G. § 4A1.2(b)(1). Application note 2 to section 4A1.2 affirms that "the length of a sentence of imprisonment is the stated maximum.... That is,

criminal history points are based on the sentence pronounced, not the length of time actually served." U.S.S.G. § 4A1.2 application note 2. In providing examples of how to treat indeterminate sentences, the Guidelines describe two situations that are identical to those presented by Garcia and Carrillo: (1) "in the case of an indeterminate sentence for a term not to exceed five years, the stated maximum is five years;" (2) "in the case of an indeterminate sentence of a term not to exceed the defendant's twenty-first birthday, the stated maximum is ... the amount of time between the date of sentence and the defendant's twenty-first birthday." *Id.*

Garcia received an indeterminate sentence for a period not to exceed three years; thus, the maximum sentence imposed on him was three years. Carrillo was sentenced for an indeterminate period not to exceed his 26th birthday; he was sentenced when he was 17 and thus the maximum sentence imposed on him was at least 8 years. The fact that their sentences were indeterminate is irrelevant, as is the length of time they actually served. Both Garcia and Carrillo clearly received "a sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.2(d)(1).

### B.

■ Garcia and Carrillo also argue that the sentences they received were not "adult sentences," and therefore should not be counted under section 4A1.2(d)(1). They rely for support on application note 7 to section 4A1.2, which states:

> Section 4A1.2(d) covers offenses committed prior to age eighteen. Attempting to count every juvenile adjudication would have the potential for creating large disparities due to the differential availability of records. Therefore, for offenses committed prior to age eighteen, only those that resulted in *adult* sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence ... within five years of the defendant's commencement of the instant offense are counted.

U.S.S.G. § 4A1.2 application note 7 (emphasis added).

Carrillo and Garcia assert that because they were committed to the California Youth Authority and not to state prison, they did not receive "adult" sentences. They contend that California law treats the two classes of offenders—those sent to state prison and those to the California Youth Authority—differently, and that the Guidelines allow reference to state law in determining whether a sentence is an "adult" or "juvenile" one. In support of their contention, they point out that an "adult conviction" for an offense committed prior to age 18 is classified as such in the Guidelines by reference to "the laws of the jurisdiction in which the defendant was convicted." U.S.S.G. § 4B1.2 application note 3. So too, they contend, should the classification of an "adult sentence" incorporate the laws of the jurisdiction in which the defendant was sentenced.

The government counters that the meaning of "adult sentences" turns on whether a defendant was convicted as an adult, and not on the place to which the defendant was sentenced. In the government's view, the term "adult sentences" in application note 7 is simply a shorthand way of referring to the text of section 4A1.2(d)(1), which encompasses any defendant under 18 who is convicted as an adult. The government thus contends that anyone who is convicted as an adult by definition receives an "adult" sentence.

Although Garcia and Carrillo's argument is not without force, the government's reading of the Guidelines appears to be the correct one. First, the language and the structure of the Guidelines and commentary support the government's interpretation that an "adult sentence" is any sentence imposed pursuant to an "adult conviction." The structure of application note 7 mimics the structure of section 4A1.2(d). The phrase in note 7, "only those that resulted in adult sentences of imprisonment exceeding one year and one month," quite clearly refers to section 4A1.2(d)(1). "Adult sentences of imprisonment" thus seems to be a shorthand reference to those

defendants who were "convicted as an adult and received a sentence of imprisonment." U.S.S.G. § 4A1.2(d)(1). In contrast to the Guidelines' directions regarding the determination of "adult conviction[s]," *see* U.S.S.G. § 4B1.2 application note 3, there is no indication in the Guidelines that sentencing courts may consider the characterization or purpose of a particular sentence under state law. *Cf. Williams*, 891 F.2d at 216 ("sentencing guidelines do not direct the sentencing court to examine the purpose behind the specific form of a prior confinement").

Second, our prior cases support the government's interpretation that the term "adult sentences" refers to any sentence imposed following an adult conviction, and the term "juvenile sentences" refers to commitments imposed following juvenile adjudications. Although we have not addressed this question explicitly, we have made this distinction implicitly in past opinions. In *United States v. Rangel–Navarro*, 907 F.2d 109, 110 (9th Cir.1990), for example, we held that section 4A1.2(d)(2)(A) applies to a defendant who was adjudicated in juvenile court and committed to juvenile hall. We relied on the term "juvenile sentence" to signify the sentence imposed following a juvenile adjudication. *Id.; see also Williams*, 891 F.2d at 215–16 (making the implicit determination that "juvenile sentences" in section 4A1.2(d)(2)(A) applies to sentences imposed following juvenile adjudications). It follows that the term "adult sentences" refers to sentences imposed following adult convictions, and that section 4A1.2(d)(1) applies to juveniles tried as adults. *See also United States v. Davis*, 929 F.2d 930, 933 (3d Cir.1991) (observing that section 4A1.2(d)(2) applies to "juvenile adjudications" and "adult convictions," which suggests that the Third Circuit interpreted "juvenile sentences" to signify sentences imposed after juvenile adjudications and "adult sentences" to signify sentences imposed after adult convictions).

Third, if Carrillo and Garcia's reading were correct, application note 7 would inject an additional requirement into the text of the Guidelines. Section 4A1.2(d)(1) on its face applies to any defendant, under the age of 18, who "was convicted as an adult and received a sentence of imprisonment exceeding one year and one month." Carrillo and Garcia suggest that application note 7 adds the requirement that, in order for section 4A1.2(d)(1) to apply, the defendant must have been sentenced to an adult prison and not a juvenile authority. To read application note 7 this way would ignore the plain language of section 4A1.2(d)(1) and would run counter to the direction of *Anderson* to read the commentary and the Guidelines as being consistent. *See Anderson*, 942 F.2d at 612.

Finally, reading application note 7 in the way suggested by Carrillo and Garcia would frustrate the purposes of section 4B1.1. *See United States v. Baker*, 961 F.2d 1390, 1392 (8th Cir.1992) (observing in dicta that it did not matter that defendant "was sentenced to the California Youth Authority and not given a prison sentence, because under the sentencing guidelines, the offense is still classified as a prior violent felony. U.S.S.G. § 4B1.2 (1990)"). The career criminal offender is punished based on the number and seriousness of his or her past offenses. *See* U.S.S.G. § 4B1.1. The sentence is more severe because the offender has demonstrated an unwillingness or inability to reform. *See* Introductory Commentary to U.S.S.G. § 4 (stating that a repeat offender is "more culpable than a first offender and thus deserving of greater punishment," and observing that "[r]epeated criminal behavior is an indicator of a limited likelihood of successful rehabilitation").

The juvenile who was tried as an adult but sent to the California Youth Authority is a defendant whom the authorities recognized committed a serious crime but who they hoped could be rehabilitated. *See Williams*, 891 F.2d at 216 ("the purpose of juvenile sentencing is rehabilitative rather than strictly punitive"); *People v. Lawrence*, 144 Cal.App.3d 290, 295, 192 Cal. Rptr. 165 (1983) ("[t]he purpose of a Youth Authority commitment is treatment and rehabilitation" (internal quotation omitted)). That this same juvenile later commits two

more serious crimes indicates that the initial judgment regarding the potential for rehabilitation was misguided. Under Garcia and Carrillo's reading of the Guidelines, this defendant would in essence be rewarded for proving wrong the initial determination regarding his or her rehabilitative potential. While such a result would be questionable under any circumstance, in this context it would be especially peculiar, because section 4B1.1 of the Guidelines explicitly seeks to punish, not reward, the repeat offender. *See Anderson,* 942 F.2d at 612 ("courts should construe the guidelines and commentary together so that they make sense in terms of the underlying purposes and overall structure of the guidelines").

AFFIRMED.