UNITED STATES of America, Plaintiff–Appellee,

v.

Granville Steven PINION, aka James Phelps, aka Terry, Defendant–Appellant.

No. 92–3068.

United States Court of Appeals, Eleventh Circuit.

Oct. 19, 1993.

942

Thomas S. Keith, Asst. Federal Public Defender, Pensacola, FL, for defendant-appellant.

Stephen P. Preisser, Asst. U.S. Atty., Pensacola, FL, for plaintiff-appellee.

Before FAY and HATCHETT, Circuit Judges and JOHNSON, Senior Circuit Judge. .

FAY, Circuit Judge:

This is an appeal from sentences the District Court for the Northern District of Florida imposed on the defendant, Granville S. Pinion. We have jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742. We

---

1. Violations of 18 U.S.C. § 1201(a)(1), 18 U.S.C. § 924(c)(1), and 18 U.S.C. § 922(g)(1) respec-

vacate the sentence imposed on Count III with instructions to make the same concurrent with the sentence imposed on Count I and affirm in all other respects.

## I. FACTS

On May 27, 1992, the defendant abducted a twelve year old girl ("victim") from her neighborhood in Gulf Breeze, Florida by displaying a handgun and forcing her to leave with him. He kept the victim inside a camper for several days and physically bound her when he left her alone. The victim stated that, over the course of the detention, the defendant made repeated sexual contact with her. The defendant threatened the victim with a handgun on various occasions and told her not to tell anyone what had happened.

After hearing news reports about the abduction, the defendant drove the camper into Alabama where he experienced car trouble and was forced to change vehicles. The next day, May 30, 1992, the defendant decided to release the victim. He took her back to an area near the campground where he initially kept her, bought her a bicycle, let her go, and told her to ride to a nearby convenience store. He also instructed her to give the police false information so that he would not be apprehended. The defendant was arrested the next day in Mobile, Alabama.

The defendant plead guilty to a three-count indictment alleging kidnapping, use of a firearm in the commission of a crime of violence, and possession of a firearm by a convicted felon.[1] Following the plea, the district court ordered a presentence investigation report. The probation officer concluded that the defendant had a total offense level of 37 and a criminal history category of VI which resulted in a guideline imprisonment range of 360 months to life. The district court overruled or denied all of the defendant's objections to the presentence investigation report.

After the hearing, the district court entered the following sentences: Count I (kidnapping)—life imprisonment followed by a

tively.

five (5) year supervised release; Count II (use of firearm in violent crime)—60 months imprisonment to be served consecutively to the sentence imposed on Count I; and Count III (possession of a firearm by a convicted felon)—120 · months imprisonment to be served *concurrently* with the sentence imposed on Count I and *consecutively* with the sentence imposed on Count II. (R1–18). The defendant now appeals the sentences he received in the district court.[2]

The defendant's first issue on appeal concerns the use of three prior South Carolina youthful offender convictions in the assessment of criminal history points and the use of one of the above convictions as a predicate offense to classify the defendant as a career offender. The defendant argues that, under the United States Sentencing Guidelines ("guidelines"), the district court should not have considered his prior South Carolina youthful offender convictions because he was seventeen (17) years old at the time he was convicted for the crimes.[3]

The defendant's final issue asks whether the district court erroneously determined that the sentence imposed on Count III should run consecutively to the sentence imposed on Count II.

## II. DISCUSSION

### 1. *The South Carolina Youthful Offender Convictions*

■ This Court reviews the district court's interpretation of the guidelines and the application of the guidelines to the facts *de novo* and reviews specific factual findings under the clearly erroneous standard. *United*

*States v. Gardiner*, 955 F.2d 1492, 1498 (11th Cir.1992).

■ In order for a criminal to receive career offender status for purposes of sentencing, he or she must satisfy the tripartite requirements of the United States Sentencing Guidelines § 4B1.1 which states, in relevant part:

A defendant is a career offender if (1) the defendant was at least eighteen years old at the time of the instant offense, (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense, and (3) *the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.*

U.S.S.G. § 4B1.1 (1991) (emphasis added). Here, it is uncontested that the defendant satisfies the first two prongs of the test. The defendant argues that no criminal history points should have been imposed for his three youthful offender convictions and further that the aggravated assault and battery conviction should not have been used to satisfy one of the two predicate offenses required by the third prong of the career offender analysis under § 4B1.1.[4]

■ In determining whether the district court properly considered the youthful offender convictions, it is necessary to turn to the applicable sections of the guidelines and the accompanying commentary. The commentary is binding on the courts insofar as it does not contradict the guidelines' textual meaning. *Stinson v. United States*, —— U.S. ——, ——, 113 S.Ct. 1913, 1918, 123 L.Ed.2d

---

**2.** The defendant raises four issues on appeal. We will examine the first and the fourth. The two remaining issues are: (2) whether the district court erred in increasing the defendant's offense level by 4 under § 2A3.1(b)(1) when the use or display of the firearm was the major factor in applying that adjustment; and (3) whether the trial court erred in denying the defendant's request for a downward adjustment for acceptance of responsibility when the court considered the defendant's exercise of his fifth amendment right against self·incrimination in making its ruling? We find no merit in these arguments and will not address the questions here.

**3.** The defendant was convicted in the Court of General Sessions for South Carolina for: (1) grand larceny of a motor vehicle, use of a vehicle without permission, temporary use of a vehicle without permission (Case No. 81–GS–18–13); (2) grand larceny of a motor vehicle, use of a vehicle without permission (Case No. 82–GS–18–28); and (3) aggravated assault and battery, attempted escape (Case No. 82–GS–18–29). Although these cases were factually unrelated, they were consolidated for sentencing in March, 1982.

**4.** The defendant had a strong arm robbery conviction that he received at age twenty (20) which served as the second of the two "crimes of violence" required under § 4B1.1.

598 (1993). Thus, we first examine section 4A1.2(d) which deals with the treatment of offenses committed prior to the age of eighteen for purposes of determining a defendant's criminal history. It states, in relevant part: "(1) if the defendant was *convicted as an adult* and received a sentence of imprisonment *exceeding one year and one month,* add 3 points under § 4A1.1(a) for each such sentence." U.S.S.G. § 4A1.2(d)(1) (1991) (emphasis added).

The defendant argues that he was not convicted as an "adult" but rather as a "youthful offender" under South Carolina law.[5] The defendant is actually asking this Court to recognize a quasi-juvenile status for a South Carolina youthful offender who is seventeen years old. As in *United States v. Unger,* 915 F.2d 759, 762 (1st Cir.1990) *cert. denied,* 498 U.S. 1104, 111 S.Ct. 1005, 112 L.Ed.2d 1088 (1991), we "decline [the] appellant's invitation to plumb the nuances of [South Carolina's] statutory scheme." To do so would thwart the purpose of the Sentencing Guidelines Act which is to " 'provide certainty and fairness in meeting the purposes of sentencing, avoiding unwarranted sentencing disparities among defendants with similar records ...' " *Id.* at 763, *citing* 28 U.S.C. § 991(b)(1)(B).

Since the "... commentary explains the guidelines and provides concrete guidance as to how even unambiguous guidelines are to be applied in practice," *Stinson,* —— U.S. at ——, 113 S.Ct. at 1918, we turn to commentary application note 7 following § 4A1.2(d) for clarification of what offenses committed by a seventeen year-old "youthful offender" may be used in calculating criminal history. Application note 7 states, in relevant part:

7. *Offenses Committed Prior to Age Eighteen.* Section 4A1.2(d) covers of-

fenses committed prior to age eighteen. Attempting to count every juvenile adjudication would have the potential for creating large disparities due to the differential availability of records. Therefore, *for offenses committed prior the age of eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month* ... are counted. To avoid disparities from jurisdiction to jurisdiction in the age at which a defendant is considered a "juvenile," this provision applies to all offenses committed prior to age eighteen.

U.S.S.G. § 4A1.2, comment. (n. 7) (1991) (emphasis added).

Because South Carolina treats criminal defendants under age 25 as "youthful offenders" rather than "adults," it is necessary to take the inquiry to a level above that of mere semantics.[6] The questions necessary in this case focus on the nature of the proceedings, the sentences received, and the actual time served. Such an examination reveals several significant facts: (1) the defendant was convicted and sentenced for the three offenses in the Court of General Sessions—*an adult court;* (2) he received two concurrent indeterminant sentences *not to exceed six years* for the two grand larceny charges; (3) he received an indeterminant sentence (to run consecutively to the above sentences) *not to exceed six years* for the aggravated assault and battery and attempted escape conviction; and (4) he was *actually confined* for 27 months.

It is undisputed that the defendant was sentenced to, and served, a period greater than one year and one month. Therefore, we may consider the nature and term of the sentence rather than South Carolina's statu-

---

5. Under South Carolina law, a "youthful offender" is a criminal defendant between the ages of seventeen (17) and twenty-five (25). *See* S.C.Code Ann. § 24–19–10(d) (Law Co-op 1976).

6. The commentary following the definitions of terms used in § 4B1.1 states, in relevant part:
(3) ... A conviction for an offense committed prior to the age of eighteen is an adult conviction if it is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted ...
U.S.S.G. § 4B1.2, comment. (n. 3) (1991).

South Carolina did not technically classify the defendant's convictions as those of an adult or of a juvenile. Yet, an examination of the four factors listed above shows that he was treated as an adult. The commentary cited in this note suggests the guidelines' willingness to accommodate a state's *treatment* of its criminals. Thus, because the guidelines do not specifically address "youthful offender" convictions, the mere title is not dispositive without an investigation of the pragmatic effect of the proceedings.

tory classification to answer the question before us. Accordingly, a 27 month confinement on three indefinite six year maximum sentences satisfies the guidelines' requirement for consideration in calculating criminal history. *United States v. Pedroli,* 979 F.2d 116, 119 (8th Cir.1992).

Several other Circuits have considered offenses committed by seventeen year-olds for purposes of determining whether those defendants should be treated as career offenders. *See United States v. Carrillo,* 991 F.2d 590 (9th Cir.1993), *cert. denied,* ⸺ U.S. ⸺⸺, 114 S.Ct. 231, 126 L.Ed.2d 186 (1993).

In *Carrillo,* the defendant was sentenced as a career offender. *Id.* at 591. One of the predicate offenses for determining his career offender status was a prior robbery conviction he received when he was seventeen. Although he was tried as an adult,[7] he received an indeterminate sentence and was committed to the California Youth Authority rather than a state prison. *Id.* The defendant argued that his indeterminate sentence and confinement by the Youth Authority was not an "adult" sentence under U.S.S.G. § 4A1.2 Application Note 7 and thus, should not be taken into consideration for purposes of determining criminal history. *Id.* at 593.

The Ninth Circuit disagreed because such an argument ignored the plain language of § 4A1.2(d)(1). *Id.* at 594. The Court affirmed the district court's finding that the prior conviction could be used as a predicate offense to satisfy the career offender provisions of the sentencing guidelines because it found that the form of the sentence was not dispositive of the nature of the offense. *Id.* *See also, United States v. Muhammad,* 948 F.2d 1449, 1459 (6th Cir.1991) *cert. denied,* ⸺ U.S. ⸺⸺, 112 S.Ct. 1239, 117 L.Ed.2d 472. (1992) (district court · properly considered prior convictions of 17 year-old tried as adult under provisions of the federal Youthful Offender Act).

Here, the defendant was convicted in an *adult* court, received and served *adult* sentences although South Carolina classified him as a youthful offender. To say that such convictions should not be considered for. purposes of determining criminal history ignores the plain language of § 4A1.2(d)(1) and Application Note 7.

In addition, the distinction between *Carrillo* and the instant case, namely that Carrillo was expressly tried as an adult but committed to the Youth Authority, does not merit a different result because the fundamental purpose of the career· offender provisions is to treat certain criminals differently because they have demonstrated an unwillingness and inability to reform. *See* U.S.S.G. Ch. 4, Pt. A, intro. comment (1991). The mere fact that the law of South Carolina is such that there is neither a vehicle nor a necessity to specifically proceed against a seventeen year-old defendant as an "adult" does not circumvent the purpose of the career offender provisions of U.S.S.G. § 4B1.1.

Accordingly, we hold that the district court properly considered the defendant's three prior youthful offender convictions in determining his criminal history points and properly used the aggravated assault and battery conviction as one predicate offense in determining that he was a career offender pursuant to U.S.S.G. § 4B1.1 (1991).

## 2. *The Count III Sentence*

■ Because the defendant did not object to the sentencing structure at the hearing, we will review the issue under the plain error doctrine. *United States v. Neely,* 979 F.2d 1522, 1523 (11th Cir.1992) (court considers objections raised for the first time on appeal to avoid manifest injustice). The defendant argues, and the government concedes, that the district court erroneously determined that the sentence on Count III should run *consecutively* to the sentence ' on Count II and *concurrently* to the sentence imposed on Count I. Rather, under 18 U.S.C. § 924(c)(1), the sentences on Counts I and III should run concurrently and the sentence on Count II should run *consecutively* to those sentences. Accordingly, we VACATE the sentence imposed on Count III and RE-

---

**7.** Under section 707 of the California Welfare and Institutions Code, the state may expressly

prosecute a seventeen-year-old as an adult.

MAND for resentencing in accord with this opinion.[8]

## III. CONCLUSION

For the above reasons, we AFFIRM the district court's use of the prior youthful offender convictions, VACATE the sentence imposed on Count III, and REMAND for resentencing consistent with this opinion.

The Judgment is AFFIRMED in part and VACATED and REMANDED in part.

---

**8.** This may be the result of some confusion when the sentences were imposed but it is such that under the law, correction is necessary.