76 F.3d 389
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Kevin Patrick LOWE, Defendant-Appellant.
 No. 95-10111.
 United States Court of Appeals, Ninth Circuit.
 Submitted Jan. 10, 1996.*
Decided Jan. 18, 1996.
 
 1
 Before: LAY,** CHOY, and PREGERSON Circuit Judges.
 
 
 2
 MEMORANDUM***
 
 
 3
 Defendant-Appellant Kevin Patrick Lowe ("Lowe") appeals his convictions for conspiring to pass and passing a treasury check with a forged endorsement (18 U.S.C. §§ 371, 510), subscribing to false personal income tax returns (26 U.S.C. § 7206(1)), and aiding in the preparation of false tax returns for other taxpayers (26 U.S.C. § 7206(2)). Lowe also appeals the calculation of his sentence under the Sentencing Guidelines and the court's imposition of restitution. We have jurisdiction under 28 U.S.C. § 1291. We affirm.
 
 
 4
 Lowe was convicted, after a three day jury trial, on all counts of a sixteen-count indictment. Lowe's convictions resulted from his preparation of 1040EZ personal income tax returns for himself and others in 1988-1990. Those returns greatly overstated the amounts of the tax refunds due to the taxpayers. The parties do not dispute the facts.
 
 
 5
 Lowe presented himself as an income tax preparer who could help taxpayers receive large tax refunds from the Internal Revenue Service ("the IRS"). Taxpayers gave him their W-2s and he prepared the tax forms for them. When the taxpayers received their refund checks, they paid Lowe his fee in cash.
 
 
 6
 In these tax returns, Lowe over-reported both earned income and federal taxes withheld by employers. Based on the false over-reporting of taxes withheld, these returns requested far larger tax refunds than those to which the taxpayers were entitled. The W-2s attached to the returns, however, reflected the correct amount of income and withholding. The IRS paid a few of these inflated refunds, despite the accurate W-2s, but stopped issuing checks when it discovered Lowe's scheme. Many of the returns used the same dollar figures for income, withholding, and refund due.
 
 
 7
 Lowe also was convicted of conspiracy to pass and passing a tax refund check the IRS issued based on a tax return Lowe had submitted for Shawn Payne. When preparing Payne's return, Lowe substituted a friend's address for Payne's true address. When the refund check arrived, Lowe forged Payne's signature and cashed the check.
 
 
 8
 At trial, the government introduced the false tax returns that Lowe was charged with preparing. It also introduced, over defense objection, an additional forty-eight tax returns prepared by Lowe that were not included in the indictment. The government introduced these returns as evidence of Lowe's intent to willfully prepare false tax returns. The judge gave the jury a limiting instruction that these false returns were only to be considered as evidence relating to Lowe's intent to willfully prepare the false tax returns charged in the indictment.
 
 
 9
 Lowe was sentenced to eighteen months imprisonment and was ordered to pay $8957.05 in restitution along with an $800.00 special assessment ($50.00 per count).
 
 
 10
 I. SUFFICIENCY OF THE EVIDENCE RE MATERIAL FALSE STATEMENTS
 
 
 11
 Lowe argues that, as matters of both fact and law, the false statements contained in the tax returns he prepared were not material. Lowe thus alleges that there was insufficient evidence to convict him of violating 26 U.S.C. § 7206(1) (making material false statements on tax returns) or 26 U.S.C. § 7206(2) (willfully aiding or assisting someone in making material false statements on tax returns).
 
 
 12
 The district court's construction or interpretation of a statute is reviewed de novo. United States v. Bailey, 41 F.3d 413, 416 (9th Cir.1994), cert. denied, 115 S.Ct. 2563 (1995). There is sufficient evidence to support a conviction if, reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979); United States v. Vgeri, 51 F.3d 876, 879 (9th Cir.1995).
 
 
 13
 Lowe reasons that, because the IRS's mandate is to determine whether taxes are owed rather than to determine and issue refunds, his over-reporting of earned income and amounts of taxes withheld and overstatements of refund amounts due were not material as a matter of law or fact. Lowe bases this argument on the fact that the IRS has its own records of the amounts of taxes withheld and that accurate W-2s were attached to the returns. Lowe argues that his false statements were neither factually nor legally material because the IRS could have compared the amounts of withheld tax reported on the returns to its own records or to the amounts listed on the W-2s. Lowe reasons that the purpose of §§ 7206(1) and (2) is merely to prevent taxpayers or preparers from impeding the IRS in its verification of its own records or W-2s. Thus, Lowe incorrectly concludes that his false statements cannot be deemed material.
 
 
 14
 Lowe, however, admits that the IRS issued seven incorrect refund checks based on the inflated refund amounts he claimed on these returns. These false statements were material within the terms of the statute because they induced the IRS to issue incorrect refund checks. In addition, the government correctly points out that this court has explicitly stated that "refund amounts claimed on a tax return are clearly material" under 26 U.S.C. § 7206(1). United States v. Hanson, 2 F.3d 942, 944-45 (9th Cir.1993) (affirming conviction of defendant under § 7206(1) for reporting false withholding amounts and claiming false refunds); see also Edwards v. United States, 375 F.2d 862, 865 (9th Cir.1967) (holding that prosecution under § 7206(2) was proper for defendant who prepared returns that falsely reported tax payments). Lowe's argument that he was wrongly prosecuted under §§ 7206(1) and (2) thus fails.
 
 
 15
 II. SUFFICIENCY OF THE EVIDENCE TO SUPPORT CONSPIRACY TO PASS AND PASSING A TREASURY CHECK WITH A FORGED ENDORSEMENT
 
 
 16
 Lowe argues that there was insufficient evidence to convict him of conspiring to pass and passing a treasury check with a forged signature. Taking the evidence in the light most favorable to the prosecution, however, a reasonable trier of fact could have found the essential elements of these offenses beyond a reasonable doubt.
 
 
 17
 Lowe argues that the prosecution presented no evidence that Shawn Payne did not give Lowe permission to cash his tax refund check. Payne did not testify at trial. Lowe admits that he claimed to be Payne and endorsed the check with Payne's signature. Lowe argues that Payne must have consented to having his tax return prepared by Lowe and consented to Lowe cashing the check because Payne's W-2s were attached to the return.
 
 
 18
 There was sufficient evidence for a reasonable finder of fact to conclude that Lowe had the requisite intent to defraud. Lowe represented himself to be Payne when cashing the check. Lowe forged Payne's signature on the check. Payne's tax return was fraudulent. There was evidence that Lowe forged Payne's signature on the tax return. In fact, Lowe was convicted of preparing Payne's fraudulent return. There was sufficient evidence to support Lowe's convictions for conspiracy to pass and passing a treasury check with a forged endorsement in violation of 18 U.S.C. §§ 371 and 510.
 
 III. JURY INSTRUCTIONS ON MATERIALITY
 
 19
 The appropriate standard of review for the denial of a defendant's proposed jury instruction "is dependent on the nature of the error alleged." United States v. Duran, 59 F.3d 938, 940 (9th Cir.1995), cert. denied, 64 U.S.L.W. 3379 (U.S. Nov. 27, 1995). The jury instruction issue here is whether the district court properly defined materiality. As this is an issue of law, we review de novo.
 
 
 20
 Lowe's proffered jury instruction defined the materiality of a false statement in a tax return as "necessary to a determination of whether income tax was owed." [ER at 90.] The district court judge rejected this instruction and instead instructed the jury that Lowe's false statements were material if they "could have influenced the Internal Revenue Service's decision or activities." [ER at 95.] This instruction was based on the Ninth Circuit's Model Jury Instruction for 18 U.S.C. § 1001, the general statute that prohibits false statements to government agencies. We have defined materiality in the context of § 1001 as a statement that has " 'a natural tendency to influence, or was capable of influencing, the decision of the decision-making body to which it was addressed.' " United States v. Gaudin, 28 F.3d 943, 949 (9th Cir.1994) (en banc), aff'd, 115 S.Ct. 2310 (1995) (quoting Kungys v. United States, 485 U.S. 759, 770 (1988).
 
 
 21
 Lowe argues that this instruction "had the effect of broadening the scope of the statute, allowing the jury to convict upon any misstatement contained in a tax return regardless whether it affects the Internal Revenue Service's decision on whether taxes were owed by the taxpayer." [Blue brief at 24-25.]
 
 
 22
 For the same reasons as stated in section I, supra, Lowe's argument fails. The issue in his trial was not whether he owed taxes but whether his statements were intended to induce the IRS to issue refund checks for an amount greater than that to which the taxpayers, including Lowe, were entitled. Lowe correctly states that the United States's "tax-assessment scheme relies on truthful self-reporting by taxpayers." [Blue brief at 25.] Any other result would encourage fraudulent refund claims and violate the purpose of the statute. See Spies v. United States, 317 U.S. 492, 497 (1943) (finding that the purpose of the Internal Revenue Code is to induce the "prompt and forthright fulfillment of every duty under the income tax law"); United States v. Bisceglia, 420 U.S. 141, 145 (1975) (stating that because the tax system is based on self-reporting, "the Government depends upon the good faith and integrity of each potential taxpayer to disclose honestly all information relevant to tax liability"). One of the duties of taxpayers is to provide the IRS with accurate information, including the actual amount of refund due. Any other result would undermine the self-reporting requirements of the entire tax system.
 
 
 23
 IV. ADMISSION OF FORTY-EIGHT OTHER FALSE TAX RETURNS
 
 
 24
 We review the admission of evidence of prior bad acts pursuant to Federal Rule of Evidence 404(b) for an abuse of discretion. United States v. Santiago, 46 F.3d 885, 888 (9th Cir.1995), cert. denied, 115 S.Ct. 2617 (1995). "We review the district court's decisions balancing the probative value of evidence against its prejudicial effect for abuse of discretion." United States v. Kallin, 50 F.3d 689, 693 (9th Cir.1995) (quoting United States v. Kessi, 868 F.2d 1097, 1107 (9th Cir.1989).
 
 
 25
 Evidence of a defendant's prior bad acts are admissible under Rule 404(b) if that "evidence is probative of a material issue in the case." United States v. Ramirez-Jimenez, 967 F.2d 1321, 1325 (9th Cir.1992). Lowe argues that the prejudicial effect of the admission into evidence of forty-eight returns for which he was not indicted substantially outweighed their probative value. He also argues that these forty-eight returns were cumulative of the fourteen returns that he was charged with falsifying.
 
 
 26
 The trial judge, however, did not abuse his discretion in admitting the forty-eight returns into evidence. The returns had probative value as evidence of Lowe's intent to submit fraudulent returns and to defraud the government. The similarity of the false statements in the returns (claiming greater income, withholding, and refund due) and the fact that many of them contained precisely the same false numbers further supported their probative value. The probative value of these returns was thus not substantially outweighed by their prejudicial effect. For the same reasons, admission of these returns into evidence was not so cumulative as to constitute an abuse of discretion. We thus affirm the district court's admission of these returns into evidence.
 
 V. CALCULATION OF THE OFFENSE LEVEL
 
 27
 The district court's interpretation and application of the Sentencing Guidelines are reviewed de novo. United States v. France, 57 F.3d 865, 866 (9th Cir.1995). Lowe argues that the district court miscalculated "tax loss" under U.S.S.G. § 2T1.1. The court determined that there had been a tax loss of $94,035, the total of the false refund amounts listed on the fourteen charged tax returns. Lowe argues that the correct amount of "tax loss" should have been $13,202.44, the total of the tax refunds the government actually paid before discovering Lowe's scheme. Use of the lower amount would have resulted in a different base offense level.
 
 
 28
 A defendant's sentence should be based on the Guidelines "that are in effect on the date the defendant is sentenced." 18 U.S.C. § 3553(a(4); U.S.S.G. § 1B1.11(a) (1994). Amendments to the Guidelines, however, that occur after defendant's offense but before sentencing that increase the defendant's sentence may violate the ex post facto clause. See United States v. Sweeten, 933 F.2d 765, 772 (9th Cir.1991). But an amendment that merely "clarifies" the meaning of a guideline is retroactive. United States v. Carillo, 991 F.2d 590, 592 (9th Cir.1993).
 
 
 29
 Here, Lowe's sentence was imposed on March 6, 1995. Thus, we first look to the 1994 Guidelines, which were in effect at the time Lowe was sentenced. The 1994 version of § 2T1.1, which applies to fraudulent returns and statements, defines "tax loss" as "the total amount of loss ... that would have resulted had the offense been successfully completed." U.S.S.G. § 2T1.1(c)(1) (1994). The 1994 Guidelines also explain that "[i]f the offense involved improperly claiming a refund to which the claimant was not entitled, the tax loss is the amount of the claimed refund to which the claimant was not entitled." U.S.S.G. § 2T1.1(c)(4) (1994). Under the 1994 Guidelines, the district court was correct in calculating "tax loss" as the total amount of the false refund claims.
 
 
 30
 The Guidelines in effect at the time Lowe committed the offenses did not contain an explicit definition of "tax loss" as including the amount of intended tax loss. The 1987, 1988, and 1989 Guidelines contained separate sections applicable to fraud and false statements and to assisting in tax fraud. U.S.S.G. § 2T1.3 and .4. These sections, however, do state that if false credits were claimed against tax, 100 percent of the total amount of these false credits would constitute the tax loss. Thus, the 1987, 1988, and 1989 Guidelines focus on the taxpayer's fraudulent intent, not on whether the IRS discovers the fraud and stops the issuance of a refund check. False credits are analogous to false withholding amounts. Both are false statements intended to either reduce taxes owed or to claim refunds.
 
 
 31
 In addition, another section of the 1987, 1988, and 1989 Guidelines covering offenses involving fraud or deceit states that, "if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss." U.S.S.G. § 2F1.1, application note 7. Accordingly, the 1993 Guidelines change of § 2T1.1 that specifically defined "loss" as including intended loss was a clarification rather than an amendment that imposed a greater base offense level. See United States v. Moore, 997 F.2d 55, 60 (5th Cir.1993) (in calculating the offense level under § 2T1.4 of the 1987 Guidelines, the calculation of "tax loss" is based on intended loss); cf. United States v. Lorenzo, 995 F.2d 1448, 1459-60 (9th Cir.1993), cert. denied, 114 S.Ct. 225 and 227 (1993) (in determining tax loss under U.S.S.G. § 2F1.1, the government need only show intended loss, and the intended loss "does not have to be realistic"). This result is more consistent with the policy of the tax laws, as stated in the Guidelines:
 
 
 32
 The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.
 
 
 33
 U.S.S.G. § 2T1, Introductory Commentary (effective 1987).
 
 
 34
 We thus affirm the district court's application of the Sentencing Guidelines that calculated Lowe's base offense level based on the amount of intended false refunds, rather than the amount of the refunds the IRS actually issued before discovering Lowe's scheme.
 
 VI. RESTITUTION
 
 35
 A restitution order is reviewed for an abuse of discretion, provided that it is within the bounds of the statutory framework. United States v. Rice, 38 F.3d 1536, 1540 (9th Cir.1994), cert. denied, 502 U.S. 1071 (1992). The legality of a restitution order is reviewed de novo. Id.
 
 
 36
 The district court ordered Lowe to pay total restitution of $8957.05. Lowe's argument that restitution was not authorized under 18 U.S.C. § 3663(a)(1) fails because the district court had separate statutory authorization to impose restitution. Ordering restitution was within the district court's discretion under 18 U.S.C. §§ 3583(d) (1995) and 3563(b)(3) (1995) as a term of supervised release.
 
 
 37
 For the foregoing reasons, WE AFFIRM.
 
 
 
 *
 The panel unanimously finds this case suitable for decision without oral argument pursuant to Fed.R.App.P. 34(a) and Ninth Circuit Rule 34-4
 
 
 **
 The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 ***
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3