[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 04, 2011
JOHN LEY
CLERK

No. 10-11819
Non-Argument Calendar
_____

D.C. Docket No. 8:09-cr-00497-RAL-EAJ-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

GREGORY ANTHONY ORTIZ,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(January 4, 2011)

Before BARKETT, HULL and MARCUS, Circuit Judges.

PER CURIAM:

After pleading guilty, Gregory Anthony Ortiz appeals his 180-month

sentence, imposed pursuant to the Armed Career Criminal Act ("ACCA"), for one

count of possession of ammunition by a convicted felon, 18 U.S.C. §§ 922(g)(1) and 924(e)(1). After review, we affirm.

## I. BACKGROUND

### A. Offense Conduct

By 2009, Ortiz had multiple Florida felony convictions, including a conviction for sale of cocaine in 1998, two convictions for sale of cocaine in 2000 and a conviction for illegal possession of a firearm in 2004. In the early hours of June 9, 2009, unknown gunmen kicked in Ortiz's front door while he, his wife and his two daughters were sleeping and fired four shots at Ortiz.

Ortiz initially told investigators he had struggled with the intruders and showed the investigators a firearm the gunmen had dropped during the struggle. Investigators found bullet holes that were consistent with Ortiz's story, but also found bullet holes suggesting Ortiz had shot at the gunmen. In a follow-up interview, Ortiz admitted he had used a firearm he kept under his bed to defend himself and his family from the intruders.

Although Ortiz promised to produce the firearm he had used, he never did. Ortiz pled guilty to one count of being a convicted felon in possession of ammunition.

### B. Presentence Investigation Report

The Presentence Investigation Report ("PSI") designated Ortiz an armed career criminal under the ACCA, 18 U.S.C. § 924(e), based on Ortiz's three prior Florida cocaine trafficking convictions. As an armed career criminal, the PSI assigned Ortiz an offense level of 33, pursuant to U.S.S.G. § 4B1.4(b)(3)(B). After apply a three-level reduction for acceptance of responsibility, the PSI recommended a total offense level of 30.

The criminal history portion of the PSI described Ortiz's prior convictions, including his three ACCA-qualifying drug trafficking offenses. The first ACCA-qualifying offense, case number 99-CF-3861, was for the sale of .1 grams of crack cocaine on October 8, 1998. Although Ortiz was sixteen, the criminal information was filed in adult court. Ortiz pled no contest and was sentenced as a youthful offender.

The second and third ACCA-qualifying offenses arose under the same case number, 00-CF-8875, as counts one and three. According to the PSI, on January 7, 2000 and April 14, 2000, Ortiz, who was then eighteen, sold .4 grams and .8 grams of crack cocaine, respectively, to an undercover Tarpon Springs police

officer at Ortiz's home. Ortiz pled no contest and was sentenced as a youthful offender.[1]

The PSI calculated ten criminal history points based on Ortiz's criminal history and assigned Ortiz a criminal history category of V. The PSI noted that, as an armed career criminal, Ortiz's criminal history category remained V, pursuant to U.S.S.G. § 4B1.4(c). With a total offense level of 30 and a criminal history category of V, the PSI computed an initial advisory guidelines range of 151 to 188 months' imprisonment. Because Ortiz was subject to the ACCA's mandatory minimum fifteen-year (or 180-month) term, Ortiz's advisory guidelines range became 180 to 188 months. See U.S.S.G. § 5G1.1(c)(2).

## B.     Written Objections

Ortiz filed written objections to the PSI, challenging its: (1) allegation that the two cocaine trafficking offenses in case number 00-CF-8875 were committed on different occasions; (2) designation of Ortiz as an armed career criminal, given that he was sentenced as a youthful offender and he did not have three or more

---

[1]In both case number 99-CF-3861 and case number 00-CF-8875, Ortiz initially pled guilty and was sentenced to 36 months in state prison. After Ortiz filed a motion to withdraw his plea and reconsider his sentence in both cases, his sentences were vacated.

On the same day, Ortiz pled no contest in both cases and was sentenced as a youthful offender to concurrent one-year-and-one-day terms of incarceration, followed by four years of probation. After Ortiz served his sentences, his probation was twice revoked and he served an additional eighteen months in jail.

separate offenses; (3) failure to specify whether the three ACCA-qualifying offenses were violent felonies or serious drug offenses; (4) failure to specify the source of the information regarding Ortiz's criminal history; (5) failure to calculate his criminal history points using U.S.S.G. § 4A1.2(d)(2)(A) due to his youthful offender status; and (6) application of the statutory mandatory minimum as contrary to the goals, purpose and objectives of the Sentencing Commission and the Sentencing Guidelines.

## C. PSI Addendum

The Probation Officer filed an addendum to the PSI rejecting Ortiz's objections. The addendum maintained, inter alia, that Ortiz's criminal history was properly calculated, that Ortiz properly was designated an armed career criminal because he committed three serious drug offenses on different occasions, and that, as such, he was subject to the ACCA's fifteen-year mandatory minimum. As to Ortiz's objection about the source of the criminal history information, the addendum explained that the Probation Officer had "obtained Ortiz's criminal history documentation from public records maintained at the Clerk of [the] Circuit Court in the county of jurisdiction," and advised that "[t]his documentation is attached for review."

## D. Sentencing

5

At the sentencing hearing, Ortiz reiterated his prior objections. Ortiz raised a new objection–that the documentation used to establish his two cocaine trafficking convictions in 2000 was unreliable because it was uncertified and contradictory. Specifically, Ortiz pointed out that, although the criminal information in case number 00-CF-8875 alleged that the cocaine sales occurred on January 7 and January 14, 2000, another document (a witness affidavit) stated that the sales occurred on January 7, 2000 and April 14, 2000. Ortiz maintained that the dates of the offenses were "January 7th, [and] January 14th," and not, as stated in the PSI, January 7 and April 14.

The district court overruled Ortiz's objections. The district court stated that it had reviewed the documentation attached to the PSI addendum, in particular the criminal informations and judgments. The district court agreed with the government's position that, if the two cocaine transactions were conducted on January 7 and 14, they were days apart, which was sufficiently distinct for purposes of the ACCA.

The district court calculated a total offense level of 30 and a criminal history category of V, which yielded an range of 151 to 188 months. Due to the ACCA's fifteen-year mandatory minimum, Ortiz's advisory guidelines range became 180 to

188 months. The district court imposed an 180-month sentence. Ortiz filed this appeal.

## II. DISCUSSION

### A. General Background About the ACCA

The ACCA imposes a mandatory minimum fifteen years of imprisonment if a defendant convicted under 18 U.S.C. § 922(g) has "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions different from one another." 18 U.S.C. § 924(e)(1). A defendant who is sentenced under the ACCA is also an "armed career criminal" under the Sentencing Guidelines, which affects both the defendant's offense level and criminal history category. See U.S.S.G. § 4B1.4(a)-(c).

To determine the nature of a prior conviction for purposes of the ACCA, the sentencing court uses a modified categorical approach looking at the fact of conviction, the prior offense's statutory elements and, if necessary, the charging documents, plea agreements and colloquies, jury instructions and other comparable judicial records. Shepard v. United States, 544 U.S. 13, 16, 125 S. Ct. 1254, 1257 (2005); United States v. Rainer, 616 F.3d 1212, 1215 (11th Cir.), petition for cert. filed, (U.S. Nov. 24, 2010) (No. 10-7787). Shepard applies to both whether the three prior convictions were for violent felonies or serious drug

offenses and whether the prior offenses were committed on different occasions. United States v. Sneed, 600 F.3d 1326, 1331-33 (11th Cir. 2010).

**B.    Ortiz's Apprendi Claim**

Ortiz argues that, under Apprendi v. New Jersey, 530 U.S. 466, 120 S. Ct. 2348 (2000), whether his two cocaine trafficking convictions in 2000 occurred on different occasions is a fact that must be submitted to a jury and proven beyond a reasonable doubt. Because Ortiz raises his Apprendi argument for the first time on appeal, our review is for plain error. See United States v. Rodriguez, 398 F.3d 1291, 1298 (11th Cir. 2005). Under the plain error standard, we may reverse only if there is (1) error; (2) that is plain; (3) that affects substantial rights; and (4) that "seriously affects the fairness, integrity, or public reputation of judicial proceedings." Id.

Under Apprendi, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." 530 U.S. at 490, 120 S. Ct. at 2362-63 (emphasis added); see also Almendarez-Torres v. United States, 523 U.S. 224, 239-47, 118 S. Ct. 1219, 1227-33 (1998) (concluding, pre-Apprendi, that the fact of a prior conviction, when used as the basis for a sentencing enhancement, need not be proven to a jury); United States v. Greer,

440 F.3d 1267, 1273-74 (11th Cir. 2006) (explaining that, even after Apprendi and its progeny, we are bound by Almendarez-Torres).

Ortiz argues that the "different occasions" inquiry of the ACCA does not fall within the "fact of the prior conviction" exception of Apprendi because it "necessitates a finding of more than the mere existence of a prior conviction." This Court has already rejected the narrow distinction Ortiz tries to draw. See Greer, 440 F.3d at 1275.

Specifically, in Greer, the district court refused to apply the ACCA's fifteen-year mandatory minimum sentence. Id. at 1269. The district court construed Almendarez-Torres and Apprendi to permit a sentencing court to determine only "the existence of a prior conviction" and not the "factual nature of a prior conviction." Id. at 1275. Thus, the district court concluded that it could not look at Shepard-approved materials to determine whether a prior conviction for terroristic threats was a "violent felony" within the meaning of the ACCA. Id. at 1272-73.

This Court reversed, concluding that "[t]here is implicit in the Shepard rule . . . a recognition that if the nature of the prior conviction can be determined from those types of records, under existing law the trial judge may make the determination." Id. at 1275. The Greer Court explained that "Shepard does not

9

bar judges from finding whether prior convictions qualify for ACCA purposes; it restricts the sources or evidence that a judge (instead of a jury) can consider in making that finding." Id.

Although Greer involved the determination of whether a prior conviction was a violent felony, Greer's reasoning applies equally to whether the offenses occurred on different occasions. And, indeed, this Court has concluded that the sentencing court may properly determine whether the offenses occurred on different occasions so long as it uses Shepard-approved materials. See, e.g., Sneed, 600 F.3d at 1332-33. Given our binding precedent, the district court did not commit error, much less plain error, in finding by a preponderance of the evidence that Ortiz's two cocaine trafficking offenses in 2000 were committed on occasions different from one another.[2]

## C. Ortiz's Youthful Offender Convictions

---

[2]At sentencing, Ortiz argued that his two cocaine trafficking offenses in 2000 were part of the same criminal episode and did not occur on different occasions. Ortiz's appellate brief does not raise that issue with specificity, and we do not address it. See United States v. Jernigan, 341 F.3d 1273, 1283 n.8 (11th Cir. 2003) (explaining that to raise an issue on appeal, the party "must plainly and prominently" do so in the brief and that passing references are insufficient).

We also do not address Ortiz's argument, raised for the first time in his reply brief, that the district court failed to articulate a reason on the record for its finding that the two offenses occurred on different occasions. See United States v. Magluta, 418 F.3d 1166, 1185-86 (11th Cir. 2005) (explaining that "an appellant may not raise an issue for the first time in a reply brief").

10

Ortiz argues that the district court erred in using his cocaine trafficking convictions as predicate ACCA offenses because the state court sentenced him as a youthful offender, which lowered his maximum imprisonment term to six years.[3]

Under the ACCA, a "serious drug offense" is one "for which a term of imprisonment of ten years or more is prescribed by law."  18 U.S.C. § 924(e)(2)(A)(ii).  Ortiz's Florida cocaine trafficking offenses carried a statutory maximum fifteen-year sentence.  See Fla. Stat. §§ 775.082(3)(c), 893.03(2)(a)(4), 893.13(1)(a)(1).  In each instance, however, the Florida circuit court sentenced Ortiz as a youthful offender under the Florida Youthful Offender Act.  See Fla. Stat. §§ 958.011-958.15.

The Florida Youthful Offender Act vests the state court with discretion to sentence an eligible adult defendant (between 18 and 21) as a youthful offender. Fla. Stat. § 958.04(1).  If the state court decides to sentence a defendant as a youthful offender, "[i]n lieu of other criminal penalties authorized by law," the court is given an array of alternative sentencing options, including probation, placement in a community control program, incarceration in county facilities, restitution centers or public and private community residential facilities, and

---

[3]We review de novo issues of statutory interpretation under the ACCA.  United States v. Pope, 132 F.3d 684, 689 (11th Cir. 1998).

11

sentences split between these options. Id. § 958.04(2)(a)-(c). However, the state court may not commit a youthful offender to the custody of the Florida Department of Corrections for more than six years. Id. § 958.04(2)(d).

This Court has concluded that a prior state conviction for which the defendant was sentenced as a youthful offender under state law may be counted as a predicate offense for ACCA purposes so long as the defendant received an adult conviction and a sentence of more than one year and one month. See United States v. Wilks, 464 F.3d 1240, 1242-43 (11th Cir. 2006) (involving prior convictions under Florida's Youthful Offender Act); see also United States v. Pinion, 4 F.3d 941, 944-45 (11th Cir. 1993) (concluding prior state youthful offender convictions can support a career offender enhancement under the Sentencing Guidelines).

Ortiz argues that our precedent was abrogated by United States v. Rodriguez, 553 U.S. 377, 128 S. Ct. 1783 (2008).[4] In Rodriguez, the district court refused to impose the ACCA's mandatory minimum sentence where the prior drug trafficking offenses carried only a five-year sentence for a first offense, but a maximum ten-year sentence for second or subsequent offenses. Id. at 381-82, 128

_____

[4]Ortiz argues only that we are no longer bound by our precedent after Rodriguez. Ortiz does not argue that, under our precedent, his prior youthful offender convictions were improperly counted.

12

S. Ct. at 1786-87. The Supreme Court reversed, concluding that the "maximum term" for purposes of the ACCA includes enhancements under a recidivist statute. Id. at 393, 128 S. Ct. 1793.

Ortiz argues that, if a recidivist statute can increase the maximum sentence for ACCA purposes, then a mitigating statute such as Florida's Youthful Offender Act can reduce the maximum sentence. However, the Supreme Court in Rodriguez specifically considered and rejected a similar argument. The defendant in Rodriguez argued that, if recidivist statutes increased the maximum sentence, then state mandatory sentencing guidelines reduced it. Id. at 390, 128 S. Ct. at 1792. The Supreme Court explained that, because even mandatory guidelines permit the sentencing court to depart upward under appropriate circumstances, the top of the guidelines range was not a maximum term for ACCA purposes. Id. at 390-91, 128 S. Ct. at 1792.

Here, as the district court emphasized, Florida's youthful offender sentencing is discretionary rather than mandatory. The state sentencing judge has discretion in whether to grant an eligible adult defendant youthful offender status and so lower the sentencing range. Because of this discretion, under Rodriguez's reasoning, the youthful offender six-year limit on custody terms is not the "maximum term" for purposes of the ACCA. Rather, the statutory maximum term

13

for Ortiz's prior cocaine trafficking offenses was fifteen years. Accordingly, the district court did not err in finding that Ortiz's youthful offender convictions were for "serious drug offenses" within the meaning of the ACCA.

## D.  Government's Proof of Prior Convictions

Ortiz contends the government failed to prove his ACCA-qualifying prior convictions by a preponderance of the evidence because (1) the probation officer, rather than the prosecution, provided the state court documents evidencing those convictions, and (2) the state court documents were not certified.

Ortiz cites no authority for his claim that a sentencing court can rely only on documents filed by the government. Given that Ortiz did not raise this argument in the district court and must show plain error, this omission is fatal. In any event, we find no error at all. The probation officer attached the state court documents to the PSI addendum in response to Ortiz's objection that the PSI failed to specify the source of its criminal history information. We see no reason why the government was required to file a duplicate set of the documents.

Likewise, there is no requirement that a document must be certified to prove a prior conviction. In fact, "[a] court may consider any information (including hearsay), regardless of its admissibility at trial, in determining whether factors exist that would enhance a defendant's sentence, provided that the information is

sufficiently reliable." United States v. Wilson, 183 F.3d 1291, 1301 (11th Cir. 1999) (concluding that, while a certified copy of a conviction would be "the best approach," testimony from a probation officer that the PSI's prior conviction information came from court documents was sufficient.)

Moreover, Ortiz did not show that the uncertified documents were not sufficiently reliable. Although Ortiz offered various arguments for why his prior convictions did not qualify him as an armed career criminal under the ACCA, Ortiz never disputed the existence of his prior convictions. The only fact Ortiz disputed was the precise dates his two cocaine trafficking offenses were committed in 2000. The district court used the dates to which Ortiz admitted at sentencing, January 7 and14, 2000, dates consistent with the criminal information provided by the probation officer.[5] Under the circumstances, the district court did not err in relying on the uncertified copies of the state court charging documents and judgments provided by the probation officer.[6]

**AFFIRMED.**

---

[5]Ortiz has never argued that the uncertified copies provided by the probation officer were improper sources of evidence under Shepard.

[6]Ortiz also has not shown that his mandatory-minimum 180-month sentence under the ACCA is contrary to the goals, purpose and objectives of the Sentencing Commission and the Sentencing Guidelines and violates the Eighth Amendment.