COMMONWEALTH vs. CLINT C., a juvenile.

Suffolk. May 7, 1999. - August 31, 1999.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Practice, Criminal,* Transfer hearing, Indictment. *Delinquent Child. Jurisdiction,* Delinquent child, Transfer hearing. *Youthful Offender Act. General Court. Statute,* Construction. *Rape. Due Process of Law,* Vagueness of statute. *Words,* "Infliction or threat of serious bodily harm."

This court concluded that a Juvenile Court judge may not dismiss an indictment brought under G. L. c. 119, § 54, the youthful offender act, absent an error of law. [222-224] IRELAND, J., dissenting.

This court concluded that statutory rape is a transferable offense under G. L. c. 119, § 54, and that the nature of the alleged act creates the threat of serious bodily harm required for indictment as a youthful offender under the statute and, in the particular circumstances of the case presented, the juvenile's position of authority over the victim, the age difference between the juvenile and the victim, and the vulnerability of the victim were sufficient to support a youthful offender indictment. [224-226] IRELAND, J., dissenting.

INDICTMENT found and returned in the Superior Court Department on February 12, 1997.

After transfers of the case to the juvenile session of the West Roxbury Division of the District Court Department and then to the Boston Division of the Juvenile Court Department, the case was heard by *Stephen M. Limon*, J., on a motion to dismiss.

The Supreme Judicial Court granted an application for direct appellate review.

*Linda Marie Poulos*, Assistant District Attorney, for the Commonwealth.

*Patricia A. O'Neill*, Committee for Public Counsel Services (*Joshua Dohan* with her) for the juvenile.

LYNCH, J. At issue in this case is whether a Juvenile Court judge erred in dismissing a youthful offender indictment under G. L. c. 119, § 54, charging the fifteen year old juvenile with

rape of a child, G. L. c. 265, § 23.[1] Prior to jury empanelment, the juvenile moved to dismiss the youthful offender indictment arguing that the charge of rape of a child does not involve the threat or infliction of serious bodily harm as required by G. L. c. 119, § 54.[2] After a hearing, the judge allowed the motion to dismiss, concluding that the facts of the case did not involve the threat or infliction of serious bodily harm. We granted the juvenile's application for direct appellate review. We conclude for the reasons set forth below that the indictment should not have been dismissed.

The judge made the following findings of fact.[3] On December 14, 1996, the victim's mother told Detective Richard Grafton that, earlier that day, she had left her six year old daughter (victim) and two other children in the care of her fifteen year old brother, the juvenile, while she went to work. She returned home for lunch, and, as she was preparing to leave, her son burst into tears and said, "[the juvenile] stuck his dinky in [the six year old victim's] mouth." Her daughters both confirmed what her son had told her. Detective Grafton interviewed the victim. The victim stated that the juvenile came into the room,

---

[1]The indictment was transferred to the juvenile division of the West Roxbury District Court, where the juvenile was arraigned on March 21, 1997. The case was then transferred on October 10, 1997, to the Boston Juvenile Court for trial.

[2]General Laws c. 119, § 54, as amended through St. 1996, c. 200, § 2, provides in relevant part:

"The *Commonwealth may* proceed by complaint in juvenile court or in a session of a district court, as the case may be, or by indictment as provided by chapter two hundred and seventy-seven, if a person is alleged to have committed an offense against a law of the commonwealth while between the ages of fourteen and seventeen which, if he were an adult, would be punishable by imprisonment in the state prison, and the person has previously been committed to the department of youth services, or the offense involves the infliction or threat of serious bodily harm in violation of law or the person has committed a violation of paragraph (*a*), (*c*) or (*d*) of section ten or section ten E of chapter two hundred and sixty-nine. *The court shall* proceed on the complaint or the indictment, *as the case may be, in accordance with sections fifty-five to* seventy-two, inclusive. Complaints and indictments brought against persons for such offenses, and for other criminal offenses properly joined under Massachusetts Rules of Criminal Procedure 9 (a) (1), shall be brought in accordance with the usual course and manner of criminal proceedings." (Emphasis added.)

[3]In finding these facts, the judge stated that he was accepting the grand jury minutes not to prove the truth of the facts, but rather to prove the specific nature of the allegations supporting the indictment.

opened his pants, exposed his penis, and placed it in her mouth, that "he made me suck his dinky," and that she had to stroke his penis with her hands while she was doing this. On February 5, 1997, the victim and her sister were separately interviewed and videotaped by members of the sexual assault unit and essentially reiterated what they had stated earlier to the detective. Additionally, the victim's sister said that, although "[the juvenile] put his penis in [the victim's] mouth," she did not hear the juvenile say anything. The victim stated: "My uncle made me suck his dinky . . . he didn't do nothing else . . . [and] [h]e didn't say anything." She further stated that the juvenile did not do anything to make her do it, "he just did it." She said that he put her hands "on his dinky," but "didn't do nothing to my hands [when they were on his penis]." The victim said that the juvenile did not say anything to her afterward, and specifically did not say anything about not telling her mother or anyone else.

The judge denied the juvenile's motion to dismiss the indictment on jurisdictional grounds, concluding that the juvenile need not be a youthful offender to be indicted pursuant to G. L. c. 119, § 54, but rather that a juvenile so indicted may subsequently be adjudicated as a youthful offender. The judge concluded that, to determine whether the juvenile may be transferred under § 54, a judge must look to the specific factual allegations in the case if the elements of the offense do not necessarily include the infliction or threat of serious bodily harm. The judge reviewed the grand jury minutes, the videotaped interviews, and the transcripts of those interviews. He then applied a probable cause standard and concluded that the Commonwealth had not met its burden of proving that the juvenile committed an offense which involves the infliction or threat of serious bodily harm. The judge did not need to address the juvenile's constitutional arguments.

On appeal, the Commonwealth argues that the judge erred in dismissing the indictment because rape of a child, G. L. c. 265, § 23, is an offense which inherently involves the threat or infliction of serious bodily harm as required for a youthful offender indictment under G. L. c. 119, § 54. The juvenile argues that, because statutory rape is an offense which intrinsically does not involve the threat or infliction of serious bodily harm, the grand jury lacked jurisdiction under G. L. c. 119, § 54, to indict him as a youthful offender and points out that the Commonwealth

need not prove lack of consent, force, or threat of bodily injury.[4] See *Commonwealth* v. *Thayer*, 418 Mass. 130, 132 (1994). The juvenile further argues that it is the specific facts of the felony charged that dictate whether a youthful offender indictment may be brought, therefore, the judge was correct in ruling that the facts of this case do not involve the threat or infliction of serious bodily harm. Last, the juvenile contends that, if § 54 is interpreted to include statutory rape as a "transferable" offense, the statute would be unconstitutionally vague on its face and as applied because the statute provides no notice that an offense not involving as an element the threat or infliction of serious bodily harm could be brought under § 54.

1. *The youthful offender act.* A comparison of the former transfer statute with the current youthful offender act is helpful in resolving the issues raised by this appeal. The former transfer statute, G. L. c. 119, § 61, authorized transfer by judicial waiver. The Juvenile Court judge was charged with making the preliminary determination whether a particular offense met the jurisdictional requirement. G. L. c. 119, § 61. In the probable cause portion of the transfer hearing, commonly known as a "Part A hearing," the judge then had to find that there was probable cause to "believe that the child ha[d] committed the offense or violation charged." *Commonwealth* v. *DiBenedetto*, 414 Mass. 37, 47 (1992), quoting G. L. c. 119, § 61. If the judge determined that probable cause existed, "dangerousness and amenability to rehabilitation are considered at a proceeding styled a Part B hearing." *Commonwealth* v. *Wayne W.*, 414 Mass. 218, 219-220 n.2 (1993). Under the former statute, "[w]e . . . adopted a directed verdict standard to determine whether the evidence was sufficient to support a transfer." *Commonwealth* v. *DiBenedetto, supra* at 48, citing *Commonwealth* v. *Matthews*, 406 Mass. 380, 388 (1990).

The Legislature enacted the youthful offender act, St. 1996, c. 200 (act), and repealed G. L. c. 119, § 61. In response to societal concerns about violent crimes committed by juveniles, the act drastically altered the procedure to be applied in such

---

[4]We agree with the single justice's conclusion in Commonwealth *vs.* John Golden, S.J.C. No. SJ-97-0405 (Nov. 6, 1997), regarding the term "youthful offender." "[A] defendant need not be a youthful offender to be indicted pursuant to G. L. c. 119, § 54, but rather that a person so indicted may subsequently be adjudicated as a youthful offender. . . . 'Youthful offender' refers not to a status necessary before an indictment may be brought by a prosecutor, but to a status that is an outcome of indictment and adjudication."

cases. See generally R.L. Ireland, Juvenile Law §§ 1-3, at 2-19 (1993 & Supp. 1998).

The act provides for prosecutorial discretion to proceed by an indictment where the juvenile has attained a certain age and is alleged to have committed a certain class of felonies.[5] Youthful offenders are those who, while between the ages of fourteen and seventeen years, commit acts that would be punishable by commitment to State prison if committed by adults and have previously been committed to the Department of Youth Services, or have committed offenses which "involve[] the infliction or threat of serious bodily harm,"[6] or commit firearms offenses. See G. L. c. 119, § 54, as amended through St. 1996, c. 200, § 2. See note 2, *supra*. Once a juvenile is treated as a youthful offender, he is no longer given the protections and privileges afforded to delinquent children. See *Doe* v. *Attorney Gen. (No. 1)*, 425 Mass. 210, 212-213 n.8 (1997).

In the present case, the judge conducted a hearing on the juvenile's motion to dismiss which was the equivalent of a transfer hearing under the former transfer statute. The current statute makes no provision for review of a prosecutor's decision to try the juvenile as an adult. " '[W]e must read the statute in a way to give it a sensible meaning.' *Beeler* v. *Downey*, [387 Mass. 609, 616 (1982)], citing *Lexington* v. *Bedford*, 378 Mass. 562, 570 (1979)." *Commonwealth* v. *Dodge*, 428 Mass. 860, 865 (1999). The Legislature clearly intended to authorize the transfer of youthful offenders on an indictment sought by the prosecuting attorney without the transfer hearing required under the former procedure. See G. L. c. 119, § 54 (*"Commonwealth may* proceed . . . by indictment" [emphasis added]). It compels the judge to proceed on the indictment in accordance with other statutory requirements set out in §§ 55-72, inclusive. See *id.*

---

[5]Every State has a transfer statute authorizing the transfer of youthful offenders to adult court and utilizes one or a combination of three transfer mechanisms: prosecutorial discretion, statutory exclusion, and judicial waiver of Juvenile Court jurisdiction. Note, Listen to the Children: The Decision to Transfer Juveniles to Adult Court, 30 Harv. C.R.-C.L. L. Rev. 507, 520 (1995). Other States that have enacted similar statutes refer to our procedure of transfer as "direct files" or prosecutorial waiver. *Id.* at 521.

[6]The juvenile was fifteen years old at the time and the offense of statutory rape is punishable by imprisonment in the State prison. Because the juvenile has not previously been committed to the Department of Youth Services, we must consider whether the offense of rape of a child, G. L. c. 265, § 23, is one which "involves the infliction or threat of serious bodily harm."

("*court shall* proceed on the complaint or the indictment" [emphasis added]).

The Legislature's decision to provide the prosecutor with the discretion to seek a youthful offender indictment, as long as the statutory prerequisites are met, is merely a limitation on the special treatment of juveniles consistent with the prosecutor's traditional broad discretion in deciding whether to prosecute a case.[7] "The Legislature has great latitude in defining criminal conduct and in prescribing penalties to vindicate the legitimate interests of society." *Commonwealth v. Pyles*, 423 Mass. 717, 720 (1996), and cases cited. "The function of the legislature [in this area] is primary, its exercises fortified by presumptions of right and legality, and is not to be interfered with lightly, nor by any judicial conception of their wisdom or propriety." *Id.* at 721, quoting *Weems v. United States*, 217 U.S. 349, 379 (1910). We have also recognized that the Legislature may establish and define methods of criminal practice and procedure. *Commonwealth v. Pyles, supra* at 722. Therefore, we conclude that, absent an error of law, a judge may not dismiss an indictment brought under G. L. c. 119, § 54.

We now turn to the question whether the act authorized the prosecutor to seek an indictment for the offense of rape of a child. The juvenile contends that the grand jury lacked jurisdic-

[7]See *Commonwealth v. Pyles*, 423 Mass. 717, 720 (1996). "[A] judge may not dismiss a legally valid indictment over objection by the Commonwealth." *Commonwealth v. Thurston*, 419 Mass. 101, 104 (1994), citing *Commonwealth v. Pellegrini*, 414 Mass. 402, 404-407 (1993). See *Commonwealth v. Brandano*, 359 Mass. 332, 334-335 (1971). See also *Commonwealth v. Doe*, 412 Mass. 815, 818 (1992) ("[a]bsent some legal basis for doing so, a judge may not reduce the charges against a defendant over the Commonwealth's objection"); *Commonwealth v. Gordon*, 410 Mass. 498, 503 (1991) (pretrial dismissal of lawful complaint prematurely cuts off prosecution without legal basis). Of course, we have also recognized that a judge may properly dismiss an indictment over the objection of the prosecutor in certain circumstances. See *Commonwealth v. O'Dell*, 392 Mass. 445, 447 (1984) (improper presentation of evidence to grand jury requires dismissal of indictment without prejudice); *Commonwealth v. Salman*, 387 Mass. 160, 166 (1982) (false testimony before grand jury to procure indictment is ground for its dismissal); *Commonwealth v. McCarthy*, 385 Mass. 160, 163 (1982) (insufficient evidence presented to grand jury to justify arrest of defendant). Moreover, "pretrial dismissal cannot be sustained if, as here, the Commonwealth fails or refuses to stipulate that it has presented all the proof available for a contemplated trial." *Commonwealth v. Pellegrini, supra* at 406, citing *Commonwealth v. Freiberg*, 405 Mass. 282, 300-301, cert. denied, 493 U.S. 940 (1989).

tion to indict him under G. L. c. 119, § 54, because neither the facts of the case nor the underlying felony involve the infliction or threat of serious bodily harm.

The act does not define the phrase "infliction or threat of serious bodily harm." See G. L. c. 119, § 54; G. L. c. 119, § 61. Neither does the act specifically provide, as the juvenile contends, that the subject offense must contain as an element of the crime the infliction or threat of serious bodily harm. "It is a well-established proposition that criminal statutes are to be construed narrowly. We have stated that '[w]e must resolve in favor of criminal defendants any reasonable doubt as to [a] statute's meaning.' " *Commonwealth* v. *Kerr*, 409 Mass. 284, 286 (1991), quoting *Commonwealth* v. *Connolly*, 394 Mass. 169, 174 (1985). "[A]lthough penal statutes must be strictly construed, that maxim 'does not require "that language be strained to reach a result favorable to the defendant." ' " *Commonwealth* v. *Caracciola*, 409 Mass. 648, 654 (1991), quoting *Commonwealth* v. *McMenimon*, 295 Mass. 467, 470 (1936). "When a statute does not define its words we give them their usual and accepted meanings, as long as these meanings are consistent with the statutory purpose. . . . We derive the words' usual and accepted meaning from sources presumably known to the statute's enactors, such as their use in other legal contexts and dictionary definitions." *Commonwealth* v. *Campbell*, 415 Mass. 697, 700 (1993), quoting *Commonwealth* v. *Zone Book, Inc.*, 372 Mass. 366, 369 (1977).

We reject the juvenile's argument that statutory rape is not a transferable offense under G. L. c. 119, § 54, because the elements of the crime do not require the Commonwealth to prove lack of consent, force, or threat of bodily injury. See *Commonwealth* v. *Thayer*, 418 Mass. 130, 132 (1994). We read the act as granting prosecutorial discretion to seek an indictment of a juvenile as a youthful offender in cases where the conduct constituting the offense itself involves the infliction or threat of serious bodily harm. There is no suggestion in the act that the Legislature intended to limit its scope to felonies in which the infliction or threat of serious bodily harm is an element of the crime.[8] Under § 61, the Legislature explicitly provided that certain violent crimes automatically triggered a transfer hearing.

---

[8]In *Commonwealth* v. *A Juvenile*, 10 Mass. App. Ct. 385, 391 (1980), an analogous case arising out of G. L. c. 119, § 61, the repealed transfer statute, the Appeals Court held that the offense of "operating a motor vehicle

The current statute makes no distinction among violent crimes. It does, however, include within the prosecutor's discretion certain nonviolent crimes, such as possession or distribution of a firearm in response, we believe, to the increase in firearm offenses committed by juveniles. It is illogical to suggest that, in enacting the youthful offender act, the Legislature intended to limit rather than broaden the class of violent offenses for which a juvenile may be indicted as a youthful offender.[9] As one of the necessary elements of rape of a child, the Commonwealth must prove that the defendant penetrated the child. In the circumstances here the invasive nature of the act of penetration created the threat of serious bodily harm.

The juvenile's position of authority, the age difference between the juvenile and the victim, and the vulnerability of the victim are sufficient to support a youthful offender indictment. The judge should not have dismissed the indictment.

2. *Vagueness.* As an initial matter, the Commonwealth contends that we should refrain from considering the constitutional issues raised by the juvenile which were not reached below. See *Doe* v. *Attorney Gen. (No. 1)*, 425 Mass. 210, 211-212, 216 (1997).

We ordinarily do not decide matters not strictly before us. On occasion we have expressed our views on such matters where the case has been fully briefed, where there is a public interest in obtaining a prompt answer to the question, and when the answer to be given is reasonably clear. See *Brown* v. *Guerrier*, 390 Mass. 631, 632-633 (1983). "There may always be

---

negligently 'so that the lives or safety of the public might be endangered' " was an offense which involved the infliction or threat of serious bodily harm. *Id.* at 390-392. The court, however, did not consider the underlying facts of the offense, but focused on whether the offense itself involved a threat of serious bodily harm. *Id.* at 389-391. In doing so, the court concluded that the word "threat" included both intentional and unintentional threats and held that "the natural reading of § 61 is that it authorizes transfers where an offense involves a danger (threat) of serious bodily harm." *Id.* at 390. That case may be distinguished from the instant case. There, the juvenile did not argue that the facts of the offense did not include the threat or infliction of serious bodily harm, but rather argued that the offense itself did not satisfy the statutory basis for a transfer hearing. *Id.* at 389-391.

[9]We find no merit in the juvenile's argument that the fact that the prosecutor did not seek an indictment under G. L. c. 265, § 22A, for forcible rape of a child illustrates that there was no infliction or threat of serious bodily harm. It is clearly the Commonwealth's discretion to choose between two statutes. See *Commonwealth* v. *Hudson*, 404 Mass. 282, 288-289 (1989). ·

exceptional cases or particular circumstances which will prompt a reviewing or appellate court, where injustice might otherwise result, to consider questions of law which were neither pressed nor passed upon by the court or administrative agency below. . . ." *Gurry* v. *Board of Pub. Accountancy*, 394 Mass. 118, 126 (1985), quoting *Albert* v. *Municipal Court of Boston*, 388 Mass. 491, 494 (1983). In this case the Commonwealth has not briefed the constitutional issues which also were not extensively argued or decided below. We nevertheless make some observations which may aid the parties in any further litigation.

The juvenile argues that, if § 54 is construed to include statutory rape as a prerequisite offense for a youthful offender indictment, it is unconstitutionally vague both on its face and as applied because it provides no notice that an offense, not involving, as an element of the crime, the threat or infliction of serious bodily harm, is included within the purview of the act.[10] We assume for the purposes of discussion that the "void for vagueness" test applies in these circumstances.

"The void for vagueness doctrine requires that criminal statutes be defined in terms that are sufficiently clear to permit a person of average intelligence to comprehend what conduct is prohibited. *Commonwealth* v. *Taylor*, [413 Mass. 243, 248 (1992)], quoting *Commonwealth* v. *Gallant*, 373 Mass. 577, 580 (1977). Due process requires not only fair notice of proscribed conduct, but also that penal statutes be administered in a manner that prevents arbitrary and discriminatory enforcement." *Commonwealth* v. *Spano*, 414 Mass. 178, 180 (1993), and cases cited. "[I]f the language which is challenged conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices, it is constitutionally adequate." *Commonwealth* v. *Jarrett*, 359 Mass. 491, 496-497 (1971), and cases cited. Moreover, the use of general terms in a statute will not make it constitutionally inadequate. *Opinions of the Justices*, 378 Mass. 822, 827 (1979).

The purpose behind the youthful offender act was to reduce or to eliminate certain protections previously available to all

[10]Specifically the juvenile argues that an ordinary adolescent would not be on notice that neither the specific allegations of the incident nor the crime of statutory rape involves allegations of force, violence, or threats. Further, he asserts that there has been no allegation that the victim has suffered any physical harm as a result of the juvenile's actions.

juvenile offenders in an effort to address growing concern about violent crimes committed by juveniles. See *Doe* v. *Attorney Gen. (No. 1), supra* at 212-213 & n.8. Here the juvenile stands accused of conduct which, if proved, would be included under the commonly understood meaning of "the infliction or threat of serious bodily harm" so as to give the juvenile a fair warning that his conduct is proscribed and may subject him to adult penalties.

The juvenile also argued in his motion to dismiss that the act was void for vagueness because it does not establish explicit standards so as to protect against arbitrary and discriminatory law enforcement. As noted above, a prosecutor has wide discretion in determining whether to prosecute an individual. *Commonwealth* v. *Latimore*, 423 Mass. 129, 136 (1996). " 'This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review.' *Wayte* v. *United States*, 470 U.S. 598, 607 (1985) . . . . The decision to prosecute may not be deliberately based 'on an impermissible classification such as race, religion, or sex,' *Commonwealth* v. *Franklin Fruit Co.*, 388 Mass. 228, 230 (1983); *Commonwealth* v. *Franklin*, 376 Mass. 885, 894 (1978), or because of the defendant's exercise of constitutional, statutory, or procedural rights. *Commonwealth* v. *Johnson*, 406 Mass. 533, 536-537 (1990); *Commonwealth* v. *McGovern*, 397 Mass. 863, 865-867 (1986). Accord *Wayte* [v. *United States,*] *supra*; *United States* v. *Bourgeois*, 964 F.2d 935, 938 (9th Cir.), cert. denied, 506 U.S. 901 (1992); *United States* v. *Penagaricano-Soler*, 911 F.2d 833, 837 (1st Cir. 1990)." *Commonwealth* v. *Latimore, supra.*[11]

The order dismissing the indictment is vacated and the case is remanded to the Boston Juvenile Court for further proceedings.

*So ordered.*

IRELAND, J. (dissenting). I agree with the Juvenile Court judge

---

[11]"There is 'no [Federal] constitutional right to any preferred treatment as a juvenile offender.' " *Commonwealth* v. *Wayne W.*, 414 Mass. 218, 222 (1993), quoting *Stokes* v. *Fair*, 581 F.2d 287, 289 (1st Cir. 1978), cert. denied, 439 U.S. 1078 (1979). We have also recognized that the Legislature, if it chose to do so, could have lawfully abolished Juvenile Court jurisdiction. *Commonwealth* v. *Wayne W., supra* at 223.

that neither the elements of the crime charged, nor the facts as alleged by the complainant, meet the statutory prerequisites for a youthful offender adjudication: that the "offense . . . involve[] the infliction or threat of serious bodily harm." See G. L. c. 119, §§ 52 and 54. Expanding on the clear language of the statute to include troubling cases such as this one is the function of the Legislature, not the Judiciary. Therefore, I respectfully dissent.

The majority opinion concludes that "[t]he current statute makes no provision for review of a prosecutor's decision to try the juvenile as an adult," except for any "error of law." *Ante* at 223-224. I believe that this conclusion is simply wrong. The issue is not whether the prosecutor made an error of law, but, rather, whether the indictment brought before the court is so deficient that it must be dismissed.

As a general matter, on a defendant's motion, judges are empowered to review any indictment brought before them and, if they find the indictment is legally insufficient to support a conviction, to dismiss it. Nothing in the relevant statutory language deprives the judge of this power in the context of youthful offender adjudications. The fact that the statute does not expressly provide for such review in no way indicates a legislative intent to prohibit it.

Under G. L. c. 119, § 54, the Commonwealth can either proceed against the juvenile under a complaint for delinquency, or seek to indict the juvenile as a youthful offender. By statute, the adjudication of a delinquency complaint is not a criminal proceeding. G. L. c. 119, §§ 53 and 74. The return of a youthful offender indictment transforms the proceeding into a criminal one. Absent the "threat or infliction of serious bodily harm," the conduct this juvenile is charged with does not qualify him as a youthful offender, and, therefore, is not criminal. "[I]f an indictment fails to state a crime, no court has jurisdiction to entertain it." *Commonwealth* v. *Cantres*, 405 Mass. 238, 239-240 (1989), citing *Commonwealth* v. *Andler*, 247 Mass. 580, 581-582 (1924). Whether the Commonwealth is proceeding on an indictment which is legally deficient is a question of law for the judge to decide.

In deviating from these well-settled principles the majority announces that, henceforth, the only relevant inquiry for a judge, when ruling on a motion to dismiss, is whether the *prosecutor*

has made an "error of law."[1] The error of law standard is well known, but its use in the present context is somewhat novel. How this new application of the standard operates is not explained, nor does it appear that it is even applied by the majority to the case at bar. I see no error in the judge's undertaking review of the indictment as he did and would not endorse the "error of law" standard announced by the court today.[2]

I also agree with the judge's conclusion that the indictment had to be dismissed. The elements of statutory rape do not include the infliction or threat of serious bodily harm in violation of law. See G. L. c. 265, § 23.[3] But the only circumstance arguably applicable in this case that would support a youthful offender indictment would be if "the offense . . . involve[ed] the infliction or threat of serious bodily harm."[4] Consequently, where the crime charged does not satisfy the statutory precondition for a youthful offender indictment there was no error in dismissing the indictment.

The majority reasons that the facts of the individual case, not the elements of the particular offense, determine whether a youthful offender indictment is proper. See *ante* at 225-226. The

---

[1]The conclusion that this is the proper standard of review for a judge to apply seems to flow from the belief that some form of transfer still occurs, with the prosecutor instead of the judge deciding whether or not to transfer the juvenile: "[t]he Legislature clearly intended to authorize the transfer of youthful offenders on an indictment sought by the prosecuting attorney without the transfer hearing required under the former procedure." *Ante* at 223. But the transfer system no longer exists. Whether the majority's reference to transfer is simply a poor choice of words, or evidence of a fundamental misunderstanding of the juvenile justice system, is unclear.

[2]The issue of whether or not a judge has the authority to review youthful offender indictments was neither raised nor argued by the parties. I question whether it is appropriate for the court to decide this case, even in part, on an issue which neither side was given the opportunity to address. If this unanticipated issue is important enough to warrant such a pivotal role in the court's ruling, notions of fundamental fairness would seem to require that the parties at least be given the opportunity to brief the issue.

[3]Section 23 states in part: "Whoever unlawfully has sexual intercourse or unnatural sexual intercourse, and abuses a child under sixteen years of age shall . . . ."

[4]General Laws c. 119, § 52, defines "[y]outhful offender" as "a person who is subject to an adult or juvenile sentence for having committed, while between the ages of fourteen and seventeen, an offense against a law of the commonwealth which, if he were an adult, would be punishable by imprisonment in the state prison, and . . . has committed an offense which involves the infliction or threat of serious bodily harm in violation of law . . . ."

statute is at best ambiguous on this point. Requiring judges to make case-specific assessments of the facts will add a great burden on them, and make their jobs much more difficult. However, even assuming that this is the correct approach, the record does not reveal, nor does the majority opinion itself discuss, any specific facts in this case which demonstrate that "serious bodily harm," as contemplated by our criminal law, and required for adjudication as a "youthful offender," was either threatened or inflicted.[5]

Because adjudication as a youthful offender exposes the juvenile to adult criminal sentences, see G. L. c. 119, § 58, the statutory provisions relating to "youthful offenders" are properly classified as penal. "Since the statute is penal in nature, it must be strictly construed." *Commonwealth* v. *Federico*, 354 Mass. 206, 207 (1968). See *Commonwealth* v. *Ruiz*, 426 Mass. 391, 394 (1998) (criminal statutes strictly construed against Commonwealth); *Commonwealth* v. *Perry*, 391 Mass. 808, 813 (1984) (same). Within the criminal law, "bodily harm" connotes physical injury. See generally *Commonwealth* v. *Travis*, 408 Mass. 1, 10 (1990); *Commonwealth* v. *Burke*, 390 Mass. 480, 482-483 (1983). There is nothing in the statute to indicate that anything beyond this common understanding of bodily harm was intended. Furthermore, to the extent the statute is seen as ambiguous regarding what qualifies as bodily harm, "the defendant is given the benefit of [that] ambiguity." *Commonwealth* v. *Wotan*, 422 Mass. 740, 742 (1996). While the conduct alleged is clearly offensive, there is no evidence that "serious bodily harm," within the meaning of G. L. c. 119, §§ 52 and 54, i.e., some physical injury, was either inflicted or threatened.

The facts of this case are troubling. However, "the words of the statute cannot be stretched beyond their fair meaning in order to relieve against what may appear to be a hard case." *Grove Hall Sav. Bank* v. *Dedham*, 284 Mass. 92, 96 (1933). I feel that the judge's interpretation of § 54 was correct and would affirm his order.

---

[5]One can easily hypothesize cases where an incident of statutory rape raises the threat or infliction of serious bodily harm; however, such hypotheticals are not this case.