**UNITED STATES of America**

v.

**Wilkin PEGUERO–MARTINEZ,**
**Defendant.**

**Criminal No. 10–10132–PBS.**

United States District Court,
D. Massachusetts.

Nov. 30, 2010.

**138**

Kenneth G. Shine, United States Attorney's Office, Boston, MA, for United State of America.

## MEMORANDUM AND ORDER

SARIS, District Judge.

### INTRODUCTION

Defendant Wilkin Peguero–Martinez pled guilty to illegal reentry of a deported alien, 8 U.S.C. § 1326, and on November 9, 2010, the Court held a sentencing hearing. The United States Sentencing Guidelines, § 2L1.2(a), provide a base level of 8 for unlawful reentry, but the government argues that the defendant is subject to a 16–level enhancement under § 2L1.2(b)(1)(A)(ii)-(iii) due to a prior guilty plea in state juvenile court as a "youthful offender" for charges related to a violent armed assault on an acquaintance. The defendant argues that because he was sixteen at the time of the prior incident and indicted as a youthful offender under M.G.L. c. 119 § 58, the offense is not "classified as an adult conviction under the laws of" 2L1.2(b)(1)(A)(ii)-(iii). *See* D.S.S.G. § 2L1.2, cmt. n. 1. The Court finds that the defendant's record as a youthful offender in Massachusetts does not subject him to a 16–level enhancement under the guidelines.

### DISCUSSION

Section 2L1.2(b)(1)(A)(ii) of the Guidelines applies a 16–level enhancement to defendants re-entering the United States following deportation after

"a conviction for a felony that is (i) a drug trafficking offense for which the sentence imposed exceeded 13 months; (ii) a crime of violence; (iii) a firearms offense; (iv) a child pornography offense; (v) a national security or terrorism offense; (vi) a human trafficking offense; or (vii) an alien smuggling offense."

In 2003 the Sentencing Commission clarified this language with the promulgation of Application Note 1(A)(iv), which specifies that "Subsection (b)(1) does not apply to a conviction for an offense committed before the defendant was eighteen years of age unless such conviction is *classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted.*" U.S.S.G. § 2L1.2, cmt. n. 1 (emphasis added). This case presents a matter of first impression.[1] Upon careful

---

**1.** Both parties cite to the First Circuit's decision in *United States v. Torres*, 541 F.3d 48 (1st Cir.2008), which held that the defendant's criminal convictions in New Jersey for offenses committed before he was eighteen could count toward a career offender enhancement under U.S.S.G. § 4B1.1. *Id.* at 51. This case is inapplicable here. The court did not determine whether New Jersey law "clas-

sified [the defendant's convictions] as adult conviction[s]" under the language in U.S.S.G. § 4B1.2 cmt. n. 1 that mirrors the Application Note at issue in this case. Rather, it relied on Application Note 7 to § 4A1.2 and Application Note 3 to § 4B1.2, which together specify that offenses committed before the age of eighteen count toward both the criminal-history score

consideration of the clear language of the Application Note and the scheme implemented by the Commonwealth's youthful offender act, the Court finds that the defendant's youthful offender adjudication does not fall within § 2L1.2(b)(1)(A)(ii)'s scope.

Massachusetts' youthful offender system was created by the 1996 amendments to M.G.L. c. 119, §§ 52–63. *See generally, Commonwealth v. Connor C.,* 432 Mass. 635, 738 N.E.2d 731, 735 (Mass.2000); *Commonwealth v. Clint C.,* 430 Mass. 219, 715 N.E.2d 1032, 1035 (Mass.1999). Before passage of the amendments, Juvenile Court judges could transfer juvenile cases to adult court after, first, finding that there was probable cause to believe that the child had committed the offense or violation charged and, then, considering the juvenile's "dangerousness and amenability to rehabilitation." *See Clint C.,* 715 N.E.2d at 1035 (citations and internal quotation marks omitted). The youthful offender act, St.1996, c. 200(act), "drastically altered the procedure to be applied to such cases." *Clint C.,* 715 N.E.2d at 1035. As opposed to allowing judges to transfer some serious cases to adult court, the act created a two-track system in juvenile court. Prosecutors can now proceed against juveniles either by complaint seeking an adjudication of juvenile delinquency or by indictment seeking an adjudication as a "youthful offender." Prosecutors may proceed against a child by indictment if he is between the ages of fourteen and seventeen and has committed an act that would be punishable by commitment to State prison if he were an adult and has already been committed to the Department of Youth Services, or has committed an offense "involv[ing] the infliction or threat of serious bodily harm" or various firearm offenses. *See id.* (citing M.G.L. c. 119 § 52). If the child is adjudicated a delinquent, the juvenile court may only sentence him to the care of the Department of Youth Services until he becomes an adult. If the child is adjudicated a "youthful offender," however, the court may sentence the defendant to:

> "(a) a sentence provided by law [for an adult] or; (b) a combination sentence which shall be a commitment to the department of youth services until he reaches the age of twenty-one, and an adult sentence to a house of correction or to the state prison as is provided by law ... or; (c) a commitment to the department of youth services until he reaches the age of twenty-one." M.G.L. c. 119, § 58; *see also, Connor C.,* 738 N.E.2d at 733.

The act was intended to "reduce or eliminate certain protections previously available to all juvenile offenders in an effort to address growing concern about violent crimes committed by juveniles." *Clint C.,* 715 N.E.2d at 1038. Nonetheless, it does not conceive of youthful offenders as adults and provides for their trials and sentencings in Juvenile Court. In contrast, the law explicitly excludes fourteen to sixteen year olds charged with murder from the Juvenile Court's jurisdiction. *See* M.G.L. c. 119 § 74. Moreover, as the Supreme Judicial Court has noted, the legislature has maintained a statutory divide between youthful offenders and adult criminal convicts:

> "Even as to the category of children adjudicated 'youthful offenders,' the

---

and the career offender enhancement if they "resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense...."

*Torres,* 541 F.3d at 51–52 (quoting U.S.S.G. § 4A1.2 cmt. n. 7). This provision is not at issue in this case, which concerns a different section of the Sentencing Guidelines.

statute does not label a 'youthful offender' proceeding as 'criminal.' The distinction our law recognizes between child and adult adjudication exists partly to avoid the infringement of a child's constitutional rights, and partly to avoid the attachment of criminal stigma to children who may be amenable to rehabilitation. The 1996 amendments did not alter that fundamental policy determination by the Legislature." *Connor C.*, 738 N.E.2d at 735–36 (citations omitted).

The youthful offender system, thus, represents a chimerical hybrid of the juvenile and adult systems. The Legislature passed the youthful offender act to make it easier to impose serious sentences on juveniles, but the act does not classify youthful offenders as adults, and this is precisely what Application Note 1(A)(iv) requires.[2] The Application Note does not say that any conviction not classified as a juvenile conviction is considered a conviction under § 2L1.2(b)(1)(A)(ii). Rather, it requires that states affirmatively classify as an adult conviction any criminal disposition arising from an offense committed before the defendant was eighteen. It is not enough that the state has found a middle ground between the juvenile and adult criminal justice systems.

The Second Circuit has found that an adjudication as a youthful offender in New York is a conviction and, thus, a predicate offense under a number of provisions of the U.S. Sentencing Guidelines, including § 2L1.2(b)(1)(A)(ii) concerning sentencing for unlawful reentry. *See United States v. Pereira*, 465 F.3d 515 (2nd Cir.2006) (unlawful reentry); *see also, United States v. Jones*, 415 F.3d 256 (2nd Cir.2005) (sentencing under § 4B1.1 for career offenders); *United States v. Cuello*, 357 F.3d 162 (2nd Cir.2004) (sentencing under § 2K2.1 for "Unlawful Receipt, Possession, or Transportation of Firearms"). In each of these cases, the court held that it did not matter that New York formally labeled the convictions as "youthful offender adjudications." In order to determine whether the adjudications were "classified as ... adult conviction[s]," district courts had to examine the "substance" of the "prior convictions and not merely how they are labeled by the state." *Pereira*, 465 F.3d at 521 (citing *Jones*, 415 F.3d at 263–64; *Cuello*, 357 F.3d at 168–69). In these cases, the fact that youthful offenders were tried and convicted in adult forums and committed to adult facilities strongly supported a finding that youthful offender adjudications in New York were, in substance, treated as adult convictions. *See Cuello*, 357 F.3d at 166.

2. The government notes that Massachusetts courts have found youthful offender adjudications to be convictions for the purposes of certain sentencing enhancements under state law. *See, e.g., Commonwealth v. Furr*, 58 Mass.App.Ct. 155, 788 N.E.2d 592, 594 (Mass. App.Ct.2003) (finding that a youthful offender adjudication constituted a predicate offense under the Commonwealth's Armed Career Criminal Act, M.G.L. c. 269 § 10G). This observation has no bearing on the instant case. Whereas the Application Note at issue here only specifically mentions "adult conviction[s]," the statutory language the court deemed dispositive in *Furr* defined "violent crime"—the category of crimes for which a

conviction counts as a predicate offense—to include "any act of juvenile delinquency involving the use or possession of a deadly weapon that would be punishable by imprisonment for [a term exceeding one year] if committed by an adult." *Furr*, 788 N.E.2d at 594 (quoting M.G.L. c. 140 § 121) (internal quotation marks omitted). If anything, the fact that the court found that the defendant's youthful offender adjudication fell within the juvenile delinquency language of M.G.L. c. 140 § 121, reinforces that Massachusetts does not classify these adjudications as adult convictions. *Furr*, 788 N.E.2d at 594; *see also, id.* (describing a youthful offender adjudication as "aggravated juvenile delinquency").

Although a persuasive interpretation of New York law, these cases do not dictate that the Court consider this defendant's youthful offender adjudication in Massachusetts a conviction under § 2L1.2(b)(1)(A)(ii). The New York youthful offender law is different from the Massachusetts law in an important respect that bears on this question. In New York, a youthful offender is tried and convicted criminally, and it is only after the conviction that a judge re-classifies the defendant. *See Cuello,* 357 F.3d at 165 (citing state cases). This ex post labeling was one of the bases for the Second Circuit's decision in *Cuello,* which found it relevant that "a conviction under New York criminal law is a *prerequisite* for a youthful offender adjudication." *Id.* at 165 (emphasis added). Alternatively, Massachusetts has established an ex ante tracking system, under which defendants ultimately adjudicated youthful offenders are initially treated as juveniles and tried in juvenile court. There are other ways in which the New York system may be more friendly to youthful offenders and treat them differently from adults. For example, once the youthful offender adjudication is made, the criminal conviction is vacated, *see* N.Y.Crim. Proc. Law § 720.10 (McKinney 2006), and youthful offenders in New York cannot be sentenced to prison terms of longer than four years. *See Cuello,* 357 F.3d at 166. But on the critical questions of the forum in which the defendant is tried and the institutions to which the defendant is committed, the youthful offender law in New York mimics the adult judicial process.

Despite these considerations, it is not entirely clear that a youthful offender adjudication in New York should always count as a predicate conviction for the purposes of sentencing in the immigration context. In fact, the Board of Immigrations Appeals has held that a youthful offender adjudication in New York does not constitute a judgment of conviction for a crime within the meaning of section 101(a)(48)(A) of the Immigration and Nationality Act, 8 U.S.C. § 1101(a)(48)(A), when considering whether to deport immigrants for convictions replaced with youthful offender adjudications. *See In re Devison-Charles,* 22 I. & N. Dec 1362, 1373 (BIA 2000). Among other considerations, the Board placed emphasis on the fact that New York State "specif[ies] that neither a youthful offender adjudication nor a determination of juvenile delinquency constitutes a conviction." *Id.* at 1367. This case considered a different federal statutory scheme and, of course, a different state's youthful offender system, but its holding illustrates the diverse glosses that can be placed on a defendant's adjudication as a youthful offender. This uncertainty, itself, counsels against application of the enhancement in this case. *See Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 65 L.Ed.2d 205 (1980) (The rule of lenity "applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose."); *United States v. Luna-Diaz,* 222 F.3d 1, 3 n. 2 (1st Cir.2000) (applying the rule of lenity when interpreting the sentencing guidelines).

There are a number of different contexts in which federal courts must analyze the substance of a prior offense to determine whether it should count as a predicate conviction for the purposes of sentencing. *See, e.g., United States v. Matthews,* 498 F.3d 25, 32–33 (1st Cir.2007) (discussing the determination of whether a juvenile adjudication may be used as a predicate conviction to support an Armed Career Criminal Act (ACCA) enhancement). In these cases, however, the guidelines do not directly incorporate a state's legal category into its own statutory regime; rather, they call for courts to make their own substantive determinations about the un-

derlying offense. *See id.* at 33 (citing 18 U.S.C. § 924(e)(2), which allows acts of juvenile delinquency to be considered violent felonies if they "ha[ve] as an element the use, attempted use, or threatened use of physical force," 18 U.S.C. § 924(e)(2)(B)(i)). Here, the language of the Application Note does not invite such an analysis. It specifically refers to whether youthful adjudications are "classified as … adult conviction[s] under the laws of [the Commonwealth]." The question calls for a categorical and formalistic analysis of state law. In Massachusetts, although youthful offenders are not wholly classified as juvenile delinquents, they are clearly not wholly classified as adults either. The defendant's prior adjudication as a youthful offender does not trigger a 16–level increase.

The defendant is, thus, subject to a base offense level of 8, which is reduced to 6 after a two-level adjustment for acceptance of responsibility. Based upon a Total Offense Level of 6 and a Criminal History Category of I, the guideline imprisonment range is 0 to 6 months. Nonetheless, the Court uses its discretion to upwardly depart and vary from this range in recognition of the severity of the crime for which the defendant was originally deported, the criminal history inadequacy pursuant to U.S.S.G. § 4A1.3, and the importance of deterring future criminal conduct. *See* 18 U.S.C. §§ 3553(a)(1), (a)(2)(A), (a)(2)(B).

### ORDER

The Court sentences the defendant to 20 months incarceration, together with the other conditions set forth in the judgment.