NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0193n.06

No. 12-4322

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
*Mar 12, 2014*
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,       )
                                )
    Plaintiff-Appellee,         )       On Appeal from the United States District
                                )       Court for the Northern District of Ohio
v.                              )
                                )
RYON NASH,                      )
                                )
    Defendant-Appellant.        )

**Before: McKEAGUE and STRANCH, Circuit Judges; COLLIER, District Judge.**[*]

**CURTIS L. COLLIER**, District Judge.   Appellant Ryon Nash ("Nash") appeals his

sentence imposed following his plea of guilty to illegally reentering the United States.  The district

court applied a sixteen-level enhancement pursuant to § 2L1.2(b)(1)(A) of the United States

Sentencing Guidelines ("USSG") because Nash was convicted of armed robbery when he was

sixteen-years old.  Nash argues that this conviction does not constitute an "adult conviction" for the

purposes of the guideline and that the enhancement should not have been applied.  We disagree and

**AFFIRM** Nash's sentence.

**I**

Nash was born in Kingston, Jamaica in 1978.  When Nash was three-years old, his father

moved to the United States.  Nash's father returned to Jamaica when Nash was nine and relocated

_____

[*] The Honorable Curtis L. Collier, United States District Judge for the Eastern District of
Tennessee, sitting by designation.

his children to Lake Wales, Florida. At the age of sixteen, Nash and another individual committed an armed robbery. He received a criminal conviction for this offense, the circumstances of which are important to this appeal, and his father then rescinded his immigration sponsorship. In 1997, Nash was deported to Jamaica.

Nash returned to the United States in 2003, obtaining a VISA in another name. He initially moved to New York before living briefly in North Carolina and finally returning to Lake Wells, Florida. He met a woman in Florida with whom he became romantically involved, and the couple had a daughter who lives in Toledo, Ohio. It was in Toledo that Nash was arrested for providing false identification documents. When Immigration and Customs Enforcement officials determined that Nash had illegally reentered the United States, he was charged with illegal reentry in violation of 8 U.S.C. § 1326(a). Nash pleaded guilty to the offense.

The guideline for § 1326 is USSG § 2L1.2, which provides a base offense level of 8. Because Nash was previously convicted of a crime of violence—the armed robbery discussed above—he received a sixteen-level enhancement pursuant to USSG § 2L1.2(b)(1)(A). Nash objected to this enhancement as well as to the criminal history computation. The district court discussed the objection to the enhancement at the sentencing hearing, which it continued for nearly three weeks to allow for further briefing on the issue. The district court eventually denied the objection and applied the enhancement.

Nash's offense level, after accounting for acceptance of responsibility, was 21 and his criminal history category was V, resulting in a guidelines range of 70 to 87 months. The district court varied below the guidelines range and sentenced Nash to 30 months. Nash appeals the application of the sentencing enhancement.

**II**

"We review [Nash's] guidelines objection—a challenge to the procedural reasonableness of his sentence—under a deferential abuse-of-discretion standard." *United States v. Yancy*, 725 F.3d 596, 598 (6th Cir. 2013) (citing *Gall v. United States*, 552 U.S. 38, 41, 51 (2007)). We review the district court's legal conclusions *de novo*; the district court's factual findings are reviewed for clear error. *Id.*

**A**

The dispute between the parties involves the application of § 2L1.2(b)(1)(A), which provides that "[i]f the defendant previously was deported, or unlawfully remained in the United States, after . . . a conviction for a felony that is . . . a crime of violence . . . , increase by 16 levels if the conviction receives criminal history points under Chapter Four or by 12 levels if the conviction does not receive criminal history points." USSG § 2L1.2(b)(1)(A). The commentary clarifies that "[s]ubsection (b)(1) does not apply to a conviction for an offense committed before the defendant was eighteen years of age unless such conviction is classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted." *Id.* cmt. n.1(A)(iv).

Nash argues his armed robbery was not an adult conviction under Florida state law at the time he received it. Prosecutors in Florida can remove a juvenile from the juvenile system and try him as an adult. Fla. Stat. § 39.052(3) (1995) ("The state attorney may file a motion requesting the court to transfer the child for criminal prosecution if the child was 14 years of age or older at the time the alleged delinquent act or violation of law was committed.").[1] But Florida's criminal system empowers courts to sentence such a juvenile as a "youthful offender." Fla. Stat. § 958.04. Florida

_____

[1]This language now appears in Fla. Stat. § 985.556(2).

established this youthful offender system "to improve the chances of correction and successful return to the community of youthful offenders sentenced to imprisonment by providing them with enhanced vocational, educational, counseling, or public service opportunities and by preventing their association with older and more experienced criminals during the terms of their confinement." Fla. Stat. § 958.021.

Nash was convicted and sentenced in this system. He was charged with armed robbery in the Circuit Court of the Tenth Judicial District of Polk County, Florida. He pleaded *nolo contedere* and the court sentenced him to eighteen months in Florida State Prison followed by four years of Youthful Offender Probation. The court recommended boot camp and also stated "Adult Sanctions Imposed." Nash argues he was sentenced as a youthful offender, not as an adult, and so the § 2L1.2(b)(1) enhancement should not have been applied in this case.

However, this is not the first time a court has considered the application of § 2L1.2(b)(1) to Florida's system. In *United States v. Cortes*, 427 F. App'x 803, 804 (11th Cir. 2011), the defendant pleaded guilty to illegal reentry. When he was sixteen, he was charged with battery and resisting an officer with violence. His case was transferred to the criminal division of the Florida Circuit Court where he was charged as an adult, but the court sentenced him as a youthful offender. *Id.* at 804–05. Years later, in an illegal reentry adjudication, the defendant received and objected to the sixteen-level enhancement at issue here. *Id.* at 805. After the district court overruled his objection and sentenced him, the defendant appealed.

The Eleventh Circuit affirmed. The court recognized that "[u]nder Florida's Juvenile Justice Act, adjudications of law violations by children under the age of 18 occur in the juvenile court (i.e., the juvenile division of the Circuit Courts) 'unless, in compliance with the Act, juvenile jurisdiction

is waived or the juvenile falls under a statutory exception.'" *Id.* at 806 (quoting *State v. Griffith*, 675 So. 2d 911, 912–13 (Fla. 1996)). Thus the court concluded "the Florida Youthful Offender Act, Florida Statutes § 958.04, does not negate a juvenile's adult conviction in the criminal division of a Florida Circuit Court." *Id.* Although a court that decides to sentence a defendant as a youthful offender has a number of sentencing options at its disposal, "[n]othing in Florida's youthful offender statute suggests that a youthful offender's conviction in the criminal division of the Florida Circuit Court is not an adult conviction under Florida law." *Id.* at 807.

Nash makes much of the fact that this opinion is unpublished. However, the conclusion in *Cortes* is consistent with a prior published Eleventh Circuit decision that considered Florida's youthful offender system in the context of the career offender guideline in § 4B1.1. *United States v. Wilks*, 464 F.3d 1240, 1243 (11th Cir. 2006) (concluding youthful offender convictions did not preclude their application to the career offender enhancement because "Wilks' treatment as a youthful offender under Florida law limited the maximum term of imprisonment and the type of facility in which he was incarcerated. However, he was otherwise treated as an adult criminal, and he was sentenced to term of imprisonment exceeding one year and one month"). For purposes of the career offender guideline, a predicate offense is an adjudication "classified as an adult conviction under the laws of the jurisdiction in which the defendant was convicted," USSG § 4B1.2 cmt. n.1, almost identical language to the enhancement at issue here.

At oral argument, Nash contended that a circuit split exists regarding the application of Florida's youthful offender statute to § 2L1.2. Nash relies upon *United States v. Orlando-Mena*, 347 F. App'x 690, 691–92 (2d Cir. 2009), in which the Second Circuit affirmed application of the enhancement at issue here. However, the analysis of *Orlando-Mena* has little relevance to this case.

The defendant in *Orlando-Mena* was eighteen at the time of his prior conviction and specifically disclaimed reliance on the application note requiring the conviction be an "adult conviction," which Nash relies on here. *Id.* at 691 n.2. Based on the defendant's position in *Orlando-Mena*, the argument the Second Circuit considered was not whether the prior conviction was an adult conviction; rather, the court considered whether the youthful offender adjudication qualified as a "conviction" at all. *Id.* at 691. The Second Circuit concluded that, even assuming the defendant served his sentence in a separate youthful-offender facility, he "was prosecuted as an adult in adult court, and was sentenced to, and served, a substantial period of incarceration," and therefore the "substance" of the adjudication was a conviction. *Id.* at 691.

We fail to see how this case provides support for Nash's argument. If anything, the Second Circuit's conclusion that Florida's youthful offender program does not alter the nature of the underlying conviction provides support for the Government's position. The operative question here—whether Nash's conviction was an *adult* conviction—was simply not addressed in *Orlando-Mena*. Admittedly, the court did take a somewhat more holistic approach to analyzing the nature of the conviction, which, at least in part, considered the nature of the sentence. This is consistent with Second Circuit precedent. *See United States v. Cuello*, 357 F.3d 162, 168–69 (2d Cir. 2004) (considering the "substance" of the prior youthful offender adjudication for the purposes of USSG § 2K2.1 and concluding it constituted an "adult conviction" because "defendant was indisputably tried and convicted in an adult forum, and [] defendant served his sentence in an adult prison"); *United States v. Driskell*, 277 F.3d 150, 154 (2d Cir. 2002) (holding that district courts should look to the "substance" of the past conviction when determining whether a youthful offender conviction should be considered an "adult conviction" for the purposes of including criminal history points

under USSG §§ 4A1.1 and 4A1.2). To the extent these cases suggest the nature of the sentence is relevant in this context, we note they do not necessarily require that a defendant have served his sentence in an adult facility. *See United States v. Cruz*, 136 F. App'x 386, 389 (2d Cir. 2005) ("[W]hile the defendants in *Cuello* and *Driskell* served prison sentences, nothing in those decisions suggests that a term of incarceration is required before a district court can classify a youthful offender adjudication as an adult conviction."). *But see United States v. Johnson*, No. 09 Cr. 139(RWS), 2009 WL 3415354, at *3–4 (S.D.N.Y. Oct. 23, 2009) (declining to apply a higher base offense level under USSG § 2K2.1 because the defendant "spent the lion's share" of his sentence in a juvenile facility and was under sixteen when he was convicted).

Regardless, we agree with the Eleventh Circuit's conclusion that the adjudication of a defendant's guilt under Florida's youthful offender system may constitute an adult conviction. Nash was convicted and sentenced in an adult forum and was otherwise treated as an adult; his lesser sentence provided under Florida's youthful offender statute does not alter the nature of the conviction.[2] *See Cortes*, 427 F. App'x at 806–07 ("[T]he Florida Youthful Offender Act, Florida Statutes § 958.04, does not negate a juvenile's adult conviction in the criminal division of a Florida Circuit Court. . . . Nothing in Florida's youthful offender statute suggests that a youthful offender's

---

[2]This also distinguishes this case from another one relied upon by Nash, *United States v. Peguero-Martinez*, 771 F. Supp. 2d 137 (D. Mass. 2010). Unlike Florida, Massachussetts "does not conceive of youthful offenders as adults and provides for their trials and sentencings in Juvenile Court," unless they were charged with murder in which case the Juvenile Court has no jurisdiction. *Id.* at 139. Given that Massachusetts law "does not label a 'youthful offender' proceeding as 'criminal,'" the court concluded that "[t]he Legislature passed the youthful offender act to make it easier to impose serious sentences on juveniles, but the act does not classify youthful offenders as adults, and this is precisely what Application Note 1(A)(iv) requires." *Id.* at 140. The court therefore did not apply the enhancement.

Nash also cites another district court case that is further distinguishable. The court in *United States v. Robinson*, 518 F. Supp. 2d 1341, 1344 (M.D. Ala. 2007), declined to apply the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B), because the defendant's prior offense under Alabama's Youthful Offender Act does not constitute a "conviction" and is not deemed to be a "conviction of crime."

conviction in the criminal division of the Florida Circuit Court is not an adult conviction under Florida law."); *Wilks*, 464 F.3d at 1243 ("Wilks' treatment as a youthful offender under Florida law limited the maximum term of imprisonment and the type of facility in which he was incarcerated. However, he was otherwise treated as an adult criminal, and he was sentenced to term of imprisonment exceeding one year and one month."). This is particularly true in Florida where the focus of the youthful offender statute is on the sentence, not the conviction. *See* Fla. Stat. § 958.021 ("The purpose of this chapter is to improve the chances of correction and successful return to the community of youthful offenders *sentenced* to imprisonment . . . .") (emphasis added); *id.* § 958.04(1) ("The court may *sentence* as a youthful offender any person [who meets the criteria] . . . .") (emphasis added); *id.* § 958.04(2)(c) (providing for sentences split between incarceration and community control); *see also Green v. State*, 975 So. 2d 1090, 1112 (Fla. 2008) (distinguishing between the New York youthful offender statute and the Florida youthful offender statute and noting "unlike the Florida statute, a youthful offender designation in New York relates to the entire adjudication, not simply the sentence").

Nash, however, urges the court to import a portion of USSG § 4A1.2 into its analysis of the § 2L1.2(b)(1)(A) enhancement. Section 4A1.2, which pertains to the computation of criminal history, provides

> for offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense are counted.

USSG § 4A1.2 cmt. n.7. Nash argues the court should interpret the term "adult conviction" in § 2L1.2 to require the defendant have served an "adult sentence" as § 4A1.2 does.

It is unclear whether accepting Nash's argument would make a difference in this case. In *United States v. Mason*, 284 F.3d 555, 558–61 (4th Cir. 2002), the Fourth Circuit concluded the career offender guideline under § 4B1.1 was inapplicable to the defendant because one of his predicate offenses involved a sentence imposed under a youthful offender statute and, pursuant to Note 7 of § 4A1.2, the career offender guideline requires both an adult conviction and an adult sentence. However, the Fourth Circuit's conclusion is not the uniform view; the Third, Ninth, Seventh, and Eleventh Circuits have concluded that a youthful offender sentence may serve as a predicate offense under the career offender guideline. *See United States v. Gregory*, 591 F.3d 964, 967 (7th Cir. 2010) (citing *United States v. Moorer*, 383 F.3d 164, 167–69 (3d Cir. 2004); *United States v. Pinion*, 4 F.3d 941, 943–45 (11th Cir. 1993); *United States v. Carrillo*, 991 F.2d 590, 593–94 (9th Cir. 1993)).[3] The Second Circuit, consistent with the precedent discussed above, looks to the "substance" of the proceedings, which may consider the nature of the sentence, *United States v. Jones*, 415 F.3d 256, 263–64 (2d Cir. 2005) (concluding a youthful offender sentence was an "adult conviction" for the purposes of the career offender guideline in part because the defendant served a sentence in an adult prison), but does not necessarily deem the nature of the sentence to be dispositive, *see Cruz*, 136 F. App'x at 389.

We need not decide whether to follow *Mason* or to agree with the majority of circuits on the question of the career offender guideline and § 4A1.2. Rather, Nash has simply offered no

---

[3]Although the court in *Pinion* considered Note 7 of § 4A1.2 in its analysis, it concluded that a youthful offender sentence was an "adult conviction" for the purposes of the career offender guideline. 4 F.3d at 945. And, as noted above, the Eleventh Circuit later concluded that a youthful offender sentence under Florida law constitutes an "adult conviction" under the career offender guideline. *Wilks*, 464 F.3d at 1243.

compelling justification for relying on this portion of § 4A1.2 when considering § 2L1.2.[4] Not only do we disagree with Nash's argument that the phrase "adult conviction" is ambiguous,[5] but the reference to an adult sentence in § 4A1.2 indicates the Sentencing Commission could have specified that a particular type of sentence was necessary to incur the § 2L1.2(b)(1)(A) enhancement but did not. The structure of the guidelines also supports this interpretation, as USSG § 1B1.1(a) requires the offense level, including specific offense characteristics, be determined prior to computing criminal history. USSG § 1B1.1(a)(2), (6). Without a specific cross-reference, it would be odd to rely on commentary to § 4A1.2 as interpretive guidance for § 2L1.2 when the Chapter Two computation must be made before the Chapter Four computation. Moreover, under the guidelines' own interpretive guidance, definitions outside of Chapter One that do not expressly reference other sections "are not designed for general applicability," but must be considered on a case-by-case basis. USSG § 1B1.1 cmt. n.2. We decline to impute § 4A1.2's commentary to § 2L1.2.

Nash also argues the court should apply the rule of lenity and construe the enhancement in his favor. The "policy of lenity means that the Court will not interpret a federal statute so as to increase the penalty it places on an individual when such an interpretation can be no more than a guess as to what Congress intended." *United States v. Galaviz*, 645 F.3d 347, 361–62 (6th Cir. 2011) (quoting *United States v. Boucha*, 236 F.3d 768, 774 (6th Cir. 2001)) (internal quotation marks omitted). Courts apply this rule to the guidelines. *Id.* at 362. "[T]he rule of lenity only

---

[4]Unlike § 2L1.2, the career offender guideline does actually incorporate § 4A1.2 by reference. *See* USSG § 4B1.2, cmt. n.3 ("The provisions of § 4A1.2 (Definitions and Instructions for Computing Criminal History) are applicable to the counting of convictions under § 4B1.1.").

[5]For instance, Nash relies on a dictionary definition of "conviction" that includes the clause "sometimes including the passing of a sentence." App. Reply Br., p. 10 (citing Oxford English Dictionary v. 3, 879 (2d ed. 1989)). This actually demonstrates that a conviction need not always result in a sentence, further suggesting we should decline to look to Nash's sentence in this context.

applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Id.* (quoting *Barber v. Thomas*, 560 U.S. 474 (2010)) (internal quotation marks omitted).

For the reasons stated, the guideline in this case does not suffer a grievous ambiguity or uncertainty. Nash argues the court should impute an unrelated portion of the guidelines to the enhancement at issue here to create an ambiguity. We decline to do so and thus the rule of lenity is inapplicable.

The district court did not err when it concluded Nash's 1996 conviction constitutes an "adult conviction" under § 2L1.2(b)(1).

**B**

One additional issue complicates the resolution of this case to some degree. Nash objected to both the § 2L1.2 enhancement as well as his criminal history computation under § 4A1.1 prior to receiving his sentence. At the sentencing hearing only the § 2L1.2 objection was discussed, although Nash did state he had "one additional slight objection to raise as well," R. 30, Hrg. Tr. at 2, Page ID #184, that he never later discussed even after the district court provided for the discussion of further objections in accordance with *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004).

In his brief, Nash discusses the criminal history objection in the context of the procedural history of the case but does not argue the district court erroneously overruled his objection. Indeed, the substance of Nash's objection is still unclear. At oral argument, however, counsel suggested that this objection may still be at issue on appeal, but then did not discuss it during argument. "Federal Rule of Appellate Procedure 28(a) requires that an appellant's brief include 'a statement of the

issues presented for review,' and '[a]n argument' on each issue presented." *Bickel v. Korean Air Lines Co., Ltd.*, 96 F.3d 151, 153 (6th Cir. 1996). We adhere to the court's normal practice and decline to consider issues not raised in the appellant's opening brief. *United States v. Moore*, 376 F.3d 570, 576 (6th Cir. 2004). Without the benefit of Nash's argument, we are left with only speculation as to the content of the argument.

### III

For the foregoing reasons, we **AFFIRM** Nash's sentence.